RICHARD L. MALAVOLTI *et al.*, Adm'rs of the Estate of Donald Lee Malavolti, Deceased, Plaintiffs-Appellants, *v.* MERIDIAN TRUCKING CO., INC., *et al.*, Defendants-Appellees.

Third District   No. 77-272

Opinion filed March 26, 1979.

Louis E. Olivero, of Peru, for appellants.

Robert M. Hansen and R. J. Lannon, Jr., both of Herbolsheimer, Lannon and Henson, P. C., of LaSalle, for appellees.

Mr. PRESIDING JUSTICE BARRY delivered the opinion of the court:

On December 1, 1972, the deceased, Donald C. Malavolti, was killed when his car collided with a semi-tractor and trailer owned by defendant Meridian Trucking Company and driven by defendant Howard C. Burton. The plaintiffs, administrators of the Malavolti estate, brought a wrongful death action against Meridian, Burton, Pre-Fab Transit Company (Meridian's lessee) and J & L Steel Corporation, alleging that the defendants' negligence was the cause of Malavolti's death. After a trial by jury, verdict was rendered for the defendants. Plaintiffs' post-trial motions for a new trial or a judgment n.o.v. were denied, and the plaintiffs appealed.

At approximately 9:15 p.m. on the night of December 1, 1972, Donald Malavolti finished his day's work at the Consolidated Grain Company in Hennepin, Illinois, where he was employed. As he left the plant he was accompanied by a co-employee, Danny Cadwallader. Both he and Malavolti had just completed a 12-hour shift. Malavolti was going to drop off Cadwallader at the Sunoco Service Station on Route 26 in Hennepin that was owned by Cadwallader before he was to continue home. The night was clear and visibility was good.

Meanwhile, defendant Howard C. Burton had unloaded his semi-tractor trailer in Davenport, Iowa, and was heading east on Interstate 80. He was accompanied by Stanley Dickey, who was following Burton in a second semi-tractor trailer. Both were bound for the Pre-Fab terminal located above the Union 76 Truck Stop in Peru. Dickey, however, had been incorrectly informed by the dispatcher in Davenport that the

terminal was located in Hennepin, and consequently took the Hennepin exit onto I-180. After driving through Hennepin twice in an unsuccessful attempt to find the Pre-Fab terminal, Dickey stopped at the Sunoco Station on Route 26 owned by Cadwallader, and inquired about the terminal's location. A telephone call was made to the Union 76 Truck Stop in Peru, and Dickey was informed that the Pre-Fab terminal was located there and not in Hennepin. While all this was occurring, Burton had driven to the Union 76 Truck Stop, and waited for Dickey to arrive. After Dickey failed to appear, Burton proceeded west on Interstate 80 to I-180 where he remembered seeing Dickey exit, and proceeded to Hennepin. Burton arrived at Cadwallader's Sunoco Station while Dickey was still there, and parked his semi-tractor behind Dickey's rig on the north shoulder of Route 26. Both rigs were facing west. Burton then informed Dickey that he knew where the Pre-Fab terminal was located, and told Dickey to follow him. Just as Burton and Dickey were returning to their rigs, Malavolti and Cadwallader arrived at the station, entering by the west drive.

While Malavolti and Cadwallader engaged in a short conversation, Burton and Dickey prepared to leave. Burton pulled around Dickey so that he could lead the way. At the trial Dickey testified that at this time all of the lights on Burton's rig were energized. This includes all lights on the front of the tractor (with the exception of the amber and red turn-signal flashers); all of the lights on the sides of Burton's flat-bed trailer (three lights, each regulation size and consisting of a reflector and an energized light, located in the front, middle and rear of the trailer); and all lights on the back of the trailer (stop lights, signal lights, and clearance lights). Burton, with Dickey following, then proceeded west on Route 26 until he came to O'Connor's Homestead, a restaurant located on the north side of Route 26 near that highway's intersection with Power Plant Road. It was sometime after Burton and Dickey left Cadwallader's Sunoco Station that Malavolti and Cadwallader finished their conversation. Malavolti then left the station by the east drive and headed west on Route 26, toward O'Connor's.

O'Connor's Homestead has two entrances on Route 26, an east entrance and a west entrance, located approximately 50 feet apart. When Burton arrived at the eastern entrance, he turned right into the restaurant parking lot, and proceeded through the lot to the west entrance, where he stopped with his cab facing south. After stopping, Burton rolled down his window and told Dickey (who had followed him into O'Connor's parking lot and was behind him) that he was going back the other way. Dickey testified that at this time all of the lights on Burton's tractor and trailer were energized, including his left turn flasher. Dickey also testified that as Burton informed him he was going back, Dickey looked into his "West

Coast" side mirrors, which enabled him to see everything behind his truck, and he saw no traffic. He could see the Sunoco Station they had just left, but nothing else. The Sunoco Station was approximately a quarter mile from the place where the accident occurred.

After thus informing Dickey, Burton began to make a left turn into Route 26 out of O'Connor's west entrance. In order to keep his trailer out of a ditch on the south side of Route 26, Burton had the right front and rear wheels of his tractor on the south shoulder, with the cab facing east. His 40-foot trailer was stretched across Route 26 (which is approximately 20 feet wide), with the end of the flat-bed trailer being a few inches from the north side of the pavement. The trailer was in this position when Malavolti's westbound Opel automobile collided with it. Malavolti was dead on arrival at the hospital.

Sheriff Warren Calbow was the first police officer on the scene. Calbow testified that all of the lights on the Burton semitractor trailer were energized, as well as the tail lights of Malavolti's Opel. Calbow could not determine if Malavolti's headlights were on as the entire front end of the car was demolished. State Trooper Bradley Acuncius arrived shortly after Calbow. He also testified that all of the lights on both vehicles were energized. Danny Cadwallader, a witness for the plaintiffs, testified that the headlights on Malavolti's car were on when he left the Sunoco Station.

At the trial Acuncius testified that Burton told him that he did not see Malavolti's car until it was about 40-50 feet east of a speed limit sign located on the south side of Route 26 and it appeared to be increasing its speed. In an effort to determine how long it would take to get from the Sunoco Station to the point of impact Acuncius subsequently drove his squad car from the Sunoco Station's east drive to the point of impact, accelerating from a dead stop to the speed limit (45 m.p.h.). He testified that it took 23 seconds at normal acceleration, to travel this distance. In addition, it took four seconds to travel from the point Burton said he first saw the car to the point of impact. Acuncius further testified that there were no skid marks left by Malavolti's car.

On appeal from the judgment for defendant, plaintiffs raise four issues for our consideration: First, whether the trial court committed reversible error in giving defendants' instruction No. 10 (IPI Civil No. 60.01) to the jury, and if it did so err, was objection to the instruction waived, as defendants contend, by plaintiffs' counsel at the instruction conference so as to preclude review by this court; second, whether the trial court committed reversible error in giving defendants' instruction No. 11 (IPI Civil No. 60.01) to the jury; third, whether the trial court committed reversible error in allowing the driver of the defendant's semi-tractor trailer, Burton, testify as to what happened in the presence of the

deceased in violation of the Illinois Dead Man's Act (Ill. Rev. Stat. 1975, ch. 51, par. 2); and finally, whether the jury's verdict for defendants is so contrary to the manifest weight of the evidence that it constitutes grounds for reversal.

Defendants' jury instruction No. 10 was as follows:

> "There was in force, in the State of Illinois at the time of the occurrence in question a certain statute which provided that: 'All motor vehicles shall, during the period from sunset to sunrise, or at any other time when visibility is so limited as to require the use of lights for safety, exhibit two lighted driving lamps showing white lights, or lights of a yellow or amber tint, visible for at least 500 feet in the direction the motor vehicle is proceeding.' If you decide that a party violated the statute on the occasion in question, then you may consider the fact together with all the other facts and circumstances in evidence in determining whether or not a party was contributorily negligent before and at the time of the occurrence."

■■ ■ The plaintiffs contend that it was reversible error to give this instruction regarding the deceased's possible contributory negligence in not having his headlights burning at the time of the accident because no evidence was given during the trial on the issue of whether or not Malavolti did in fact have his headlights energized. In support of this position the plaintiffs properly cite numerous Illinois cases that have held it to be "serious error to lead a jury astray by giving an instruction assuming there is evidence of a fact where there is none tending to prove such fact." (*Darby v. Checker Co.* (1972), 6 Ill. App. 3d 188, 196, 285 N.E.2d 217, 222.) However, it is not reversible error for the trial court to give an instruction based upon a fact if there is *some* evidence given in support of that fact. In *Hitt v. Langel* (1968), 93 Ill. App. 2d 386, 393, 236 N.E.2d 118, 122, the court said: " 'Each party is entitled to have the court instruct the jury on his theory of the case, provided that there is an evidentiary basis for the instruction. "All that is required in order to justify the giving of an instruction is that there is *some evidence* in the record to support the theory set out in the instruction." *Biggerstaff v. New York, C. & St. L. R. Co.*, 13 Ill. App. 2d 85, 94, 141 N.E.2d 72' " (quoting *Wrighthouse v. Brown* (1964), 52 Ill. App. 2d 191, 196, 201 N.E.2d 752, 754 (emphasis added)). From our reading of the record, there indeed was some evidence given during the trial to support the giving of the instruction. Dickey testified that before Burton pulled out of O'Connor's parking lot he looked into his mirror and could see no traffic behind him on Route 26. Burton told Trooper Acuncius that he did not see Malavolti's car until it was 40 to 50 feet east of the speed limit sign. Sheriff Calbow testified that he was unable to ascertain whether or not Malavolti's

headlights were burning because the front end of his car was destroyed. It may very well be true that this evidence showing that Malavolti was driving without headlights is not very convincing, but what matters is not the probative value of the evidence but rather its existence as far as support for a jury instruction is concerned. The test is whether there is some evidence in the record to support the theory set out in the instruction. We feel that the evidence tendered meets the requirement of "some evidence," its probative quality notwithstanding. It is the province of the jury to decide how much weight this evidence is to be given.

In any event, the plaintiffs' argument that the trial court was in error in giving defendants' instruction No. 10 is in great part inconsequential because plaintiffs' counsel waived any objection to it at the instruction conference. The following discourse relating to defendants' instruction No. 10 took place between the court, defendants' counsel, and plaintiffs' counsel at the instruction conference:

"THE COURT: Defendant's Instruction Number Ten, I.P.I. 60.01.

MR. OLIVERO: Objection. This is an instruction tendered by the Defendant, Your Honor, and the pleadings of the record raise no affirmative defense as to any acts on the part of the decedent in this lawsuit. There was a strict denial of the allegations of due care on the part of the Plaintiff, but not an affirmative defense raised, and the issue made by the pleadings did not contain any allegations that either the vehicle of the tractor trailer of the Defendant or the vehicle of the Plaintiff's Decedent were not operating without lights when this accident occurred which was in the evening hours at approximately 9:45 p.m. in December of 1972. Therefore, this is improper to be instructing the jury about the Statute that is not an issue and not be formed or raised as an issue in the pleadings.

THE COURT: But it has been raised in the case, has it not?

MR. OLIVERO: Well, I don't know that it has been raised in the case, Your Honor.

THE COURT: From the evidence.

MR. OLIVERO: There is, maybe Mr. Lannon thinks it is and he is attempting to interject this into a lawsuit, but as I understand the law there has got to be pleadings of record before you can create an issue and there is no issue created by the pleadings with regard to any lights.

THE COURT: Wasn't the denial of some of the Defendant, I haven't taken a quick look at the, but I am sure he denied very strenuously would lead to this right here, isn't that correct?

MR. OLIVERO: Your Honor, my pleadings did not raise the issue of not having lights and he could deny all the allegations but it

is affirmative on his part to raise the allegations at this time which he has not done.

THE COURT: Mr. Lannon, do you want to be heard on that?

MR. LANNON: Your Honor, the law in Illinois is the proof of due care is in the affirmative burden of the Plaintiff. The denial of that allegation permits any evidence as to negligence on the part of the Plaintiff and this statute simply further is a—

THE COURT: Objection is overruled. The instruction will be given."

■■ It is well settled that counsel must object to any instruction given at the instruction conference if the objection is to be preserved for appeal. Failure to object at the instruction conference constitutes a waiver of the objection. "It is well settled that a ground urged against a particular instruction may not be raised for the first time on review." (*Raabe v. Maushak* (1977), 55 Ill. App. 3d 169, 173, 371 N.E.2d 96, 100 (citing *Saunders v. Schultz* (1960), 20 Ill. 2d 301, 170 N.E.2d 163.)) In addition, "[t]he grounds of the objections shall be *particularly specified.*" (Emphasis added.) (Supreme Court Rule 239(b), 58 Ill. 2d 239(b).) This has been interpreted to mean that the objection must be specific enough to "fairly inform the trial judge of the basis of the objection." (*Allen v. Howard Bowl, Inc.* (1965), 61 Ill. App. 2d 314, 317, 210 N.E.2d 342, 343.) Our task then is to determine if plaintiffs' counsel's claim before us that there is no evidentiary basis for the giving of defendants' instruction No. 10 was in fact particularly specified as the ground for objection at the instruction conference. From an examination of the discussion between the court and counsel which relates to the propriety of instruction No. 10, it is clear that plaintiffs' counsel's original objection to the instruction was based on the fact that the issue of the deceased's headlights not being energized at the time of the accident was not raised in the pleadings. Although the court raised the question of whether such issue had been raised in the evidence, plaintiffs' counsel seemed concerned only with the fact that this issue had not been raised *in the pleadings,* and did, in fact, gloss over the court's interjection that it might have been raised in the evidence. The entire discussion between plaintiffs' counsel and the court concerning instruction No. 10, except for the court's quickly dismissed hypothesis that the issue of the headlights might have been raised in the evidence, related to the issue being raised in the pleadings. Given plaintiffs' counsel's statements, we fail to see how he objected to the instruction on the specific grounds that it lacked an evidentiary basis, and thus could have fairly informed the court that lack of evidentiary support was indeed the basis of his objection. Consequently, we hold that plaintiffs' counsel's failure to specifically object to defendants' instruction No. 10 at the instruction conference on the grounds that there was no

evidence to support its being given resulted in a waiver of that particular objection.

Plaintiffs' second contention on appeal is that the trial court committed reversible error in giving defendants' instruction No. 11, (IPI Civil No. 60.01), to the jury. Defendants' instruction No. 11 was as follows:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that: 'No vehicle may be driven upon any highway of this State at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property. The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection. Speed must be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.' If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was contributorily negligent before and at the time of the occurrence."

Plaintiffs' objection to this instruction is two-fold: First, they contend that the accident did not occur at an intersection, and therefore that portion of the instruction relating to the duty of a driver to decrease speed when approaching and crossing on an intersection was misleading and erroneous; and second, there was nothing in the record to support the giving of that portion of the instruction relating to the duty of a driver to decrease speed as is necessary.

We consider both of these objections to be without merit. We agree with the plaintiffs that the accident occurred at a private drive (O'Connor's parking lot, from which Burton was turning onto Route 26) and not at an intersection. However, the instruction relates to the duty of a driver to decrease speed while "approaching and crossing" an intersection. It seems obvious to us from the facts that Malavolti was indeed approaching an intersection, that being the intersection of Route 26 and Power Plant Road, prior to the collision. Plaintiffs themselves stated in their complaint that at the time of the accident Malavolti was operating his Opel in a westerly direction on Route 26, 30 feet east of the Power Plant Road intersection.

Plaintiffs' reliance on *Elliston v. Hunsinger* (1972), 8 Ill. App. 3d 1068, 290 N.E.2d 688, in support of their view that the intersection portion of

the instruction is erroneous is misplaced. In *Elliston* the defendant was turning left out of a median crossing on a four-lane highway when struck by plaintiff's car. The court held that the trial court had correctly refused to tender an instruction regarding the duty of a driver to decrease speed upon approaching an intersection because the median crossover did not constitute an intersection. Here, however, although the accident occurred while the defendant was turning out of a private drive, the deceased was in fact approaching an intersection located approximately 30 feet west of the point of impact. Thus, this case can be factually distinguished from *Elliston*.

■■ Plaintiffs would have us read the intersection portion of the instruction in such a way that a party would have to both approach and cross the intersection before it would be applicable. We refuse to interpret this instruction in such a restrictive manner. We also reject the plaintiffs' contention that the jury was misled by the instruction. We fail to see how the jury could have been misled by the instruction into believing that the accident did in fact occur at an intersection, given the considerable amount of evidence (including a diagram, introduced into evidence by plaintiffs) describing exactly where the accident occurred.

■■ Plaintiffs' second objection to defendants' instruction No. 11 is that there is nothing in the record to support the giving of that portion of the instruction relating to the duty of a driver to decrease his speed as is necessary. From our examination of the record it appears the only evidence tendered on the issue of Malavolti's speed was the testimony of Trooper Acuncius. Acuncius testified that it took him 23 seconds to drive from the east drive of Cadwallader's Sunoco Station to the point of impact, accelerating normally from a dead stop to 45 miles per hour, which is the speed limit on Route 26. He also testified that Burton told him he thought that Malavolti's car was increasing its speed when he (Burton) first saw it 40 to 50 feet east of the speed limit sign. Just as we said in our discussion of the propriety of defendants' instruction No. 10 above, the test used in determining if the trial court committed reversible error in tendering an instruction is whether there is *some evidence* in the record to support the theory set forth in the instruction. (*Hitt v. Langel* (1968), 92 Ill. App. 2d 386, 393, 236 N.E.2d 118, 122; *Wrighthouse v. Brown* (1964), 52 Ill. App. 2d 191, 196, 201 N.E.2d 752, 754; *Biggerstaff v. New York, Chicago & St. Louis R. Co.* (1957), 13 Ill. App. 2d 85, 94, 141 N.E.2d 72, 77. See *Figarelli v. Ihde* (1976), 39 Ill. App. 3d 1023, 351 N.E.2d 624.) We believe that Trooper Acuncius' testimony satisfies the "some evidence" test. As we stated above, the probative value of the evidence presented makes no difference in whether or not there has been evidentiary support for the instruction. If there has been some evidence tendered which supports the theory set forth in the instruction—and there was here, in the

form of Trooper Acuncius' testimony—then an instruction based on that evidence may be given. The trial court did not commit any error in tendering the speed portion of defendants' instruction No. 11 to the jury.

The third issue raised by plaintiffs on appeal concerns a possible violation of the Illinois Dead Man's Act (Ill. Rev. Stat. 1975, ch. 51, par. 2). The plaintiffs contend that the trial court committed reversible error in allowing defendant Burton to testify over objection to events happening in the presence of the deceased. That portion of Burton's testimony is as follows:

> "MR. LANNON: At anytime, Mr. Burton, from the time you arrived in Hennepin on the first of December until you left did you turn your light switches on?
>
> A: They say they was already on.
>
> Q: And you never turned them on afterwards?
>
> A: Turn them on or off?
>
> A: Oh, no, excuse me. You never turned them on after this accident?
>
> A: No, they was already on in the beginning.
>
> Q: What lights were burning on the tractor when you left Hennepin that night when you went on to where you were going?
>
> MR. OLIVERO: Again Your Honor, I object. It is irrelevant.
>
> THE COURT: He may answer that.
>
> A: They all were burning."

The Illinois Dead Man's Act (Ill. Rev. Stat. 1975, ch. 51, par. 2) states:

> "In the trial of any civil action in which any party sues or defends as the representative of a deceased or incompetent person, no adverse party or person directly interested in the action shall be allowed to testify on his own behalf to any conversation with the deceased or incompetent person or to any event which took place in the presence of the deceased or incompetent person * * *."

■ The statute clearly excludes as evidence any testimony of an adverse party which relates to any event which took place in the presence of the deceased. Burton testified that he had his lights on from the time he arrived in Hennepin until he left. This time period encompasses the time of the accident. The plaintiffs argue that since the inference to be drawn from Burton's testimony is that he had his lights burning at the time of the accident, i.e., in the presence of the deceased, his testimony is violative of the Dead Man's Act and should have been excluded. On close inspection, however, it is clear that all Burton said is that his lights were on when he arrived in Hennepin, he never turned them on after the accident, and they were burning when he left Hennepin that night. None of this occurred within Malavolti's presence. Further, the only rational purpose of the Dead Man's Act is to bar only that evidence which the deceased could

have refuted. (*Foster v. Englewood Hospital Association* (1974), 19 Ill. App. 3d 1055, 1067, 313 N.E.2d 255, 265-66.) Malavolti could not have refuted Burton's testimony regarding the lights because he was not present when Burton turned on his lights prior to his arrival in Hennepin, and the remainder of Burton's testimony relates to events taking place after Malavolti's death. Therefore, Burton's testimony is not violative of the Dead Man's Act, and the trial court committed no error in allowing Burton to testify as he did.

■■ The plaintiffs' final contention on appeal is that the jury's verdict for defendants is contrary to the manifest weight of the evidence. "For a verdict to be against the manifest weight of the evidence, it must be clearly and palpably against the weight of the evidence [citation] or an opposite conclusion must be clearly apparent." (*Rankin v. Hojka* (1976), 42 Ill. App. 3d 440, 446, 355 N.E.2d 768, 772-73.) In *Hitt v. Langel* (1968), 93 Ill. App. 2d 386, 397, 236 N.E.2d 118, 124, the court said, citing numerous Illinois cases, that " '[i]t is for the jury alone to determine the credibility of witnesses and the weight of the evidence on controverted questions of fact. A verdict based on conflicting evidence and approved by the trial judge should not be disturbed on appeal unless contrary to the manifest weight of the evidence; that is, an opposite conclusion must be clearly evident, clear, plain, indisputable. [Citation.]' " More recently this court, in the case of *Beebe v. Commonwealth Edison Co.* (1977), 45 Ill. App. 3d 43, 358 N.E.2d 1343, applied the rule proposed in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, in an effort to determine if the jury's verdict for defendant in that case should have been reversed. Insofar as the plaintiff here moved for a judgment *n.o.v.* after the jury's verdict was returned, and this motion was denied, application of the *Pedrick* rule is proper if we are to determine the propriety of the denial. The *Pedrick* rule, as applied to this case, compels us to reverse if we find all the evidence, when viewed in its aspect most favorable to the defendant, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. We are unable to say that, given the totality of the evidence, either the denial of the motion for judgment *n.o.v.* was improper, or the judgment for defendant was against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the Circuit Court of Putnam County is affirmed.

Judgment affirmed.

STENGEL and ALLOY, JJ., concur.