Nellie R. **FANKBONER, Individually and as Executrix of the Estate of Francis Lee Fankboner, d/b/a Waverly Sand and Gravel Company a/k/a Waverly Gravel and Concrete, Waverly Sand and Gravel Company, and Raymond G. Hamilton, Defendants-Appellants,**

v.

Elmer C. **SCHUBERT, Plaintiff-Appellee.**

No. 1–481A114.

Court of Appeals of Indiana,
First District.

Feb. 25, 1982.

Rehearing Denied April 14, 1982.

---

C. Wendell Martin, Martin & Hartley, Indianapolis, Jack Rogers, Rogers, Tompkins & Gesse, Franklin, for defendants-appellants.

Thomas A. Deal, William V. Barteau, Barteau & Deal, Speedway, Tom G. Jones, Jones & Loveall, Franklin, for plaintiff-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Defendants-appellants Nellie R. Fankboner, Waverly Sand and Gravel Company, and Raymond G. Hamilton bring this appeal from a judgment in favor of plaintiff-appellee Elmer C. Schubert on his claim for damages for personal injury. We reverse and remand.

## FACTS

Shortly before 3:00 p. m. on May 18, 1978, Elmer Schubert, age 30, was riding his motorcycle in the left-hand lane of northbound State Road 37. Meanwhile, Raymond Hamilton had stopped the dump truck he was driving at a stop sign on Johnson County Road 650 North, at the intersection with State Road 37. Hamilton was headed in a westerly direction. Schubert was approaching the intersection from the south. Hamilton proceeded to cross the northbound lanes of State Road 37, a highway divided by a median. Schubert collided with Hamilton's truck while the truck was still straddling the left-hand, northbound lane.

Schubert was rendered unconscious and remained in a coma for a time. At the time of trial, Schubert had difficulty with speaking clearly, reading, remembering, auditory discrimination, and using his right hand. After the accident he returned to work at the Indianapolis Police Department where he had been a law enforcement officer, but he was ultimately retired by the department because of his medical problems.

A jury trial of Schubert's personal injury claim resulted in a verdict and judgment in his favor in the amount of $177,500. The defendants' motion to correct errors was overruled.

## ISSUE

Although defendants raise numerous issues for our consideration, we find that our resolution of the following issue is dispositive of this appeal: Whether the trial court erred in refusing Defendants' Tendered Instruction No. 7 pertaining to the statutory requirement that a motorcycle headlamp be illuminated at all times when the motorcycle is in operation.

## DISCUSSION AND DECISION

The defendants assert as error the trial court's refusal to give their Tendered Instruction No. 7, which reads as follows:

"You are instructed that on May 18, 1978, there was in full force and effect in the State of Indiana a statute which reads in part as follows:

'IC 9–8–9–2—In addition to all other laws and regulations applicable to the driving and operation of motorcycles on the public streets and highways, the following shall also apply:

\*      \*      \*      \*      \*      \*

'(e) Headlamps shall be illuminated at all times when a motorcycle is in operation.'

"The violation of a statutory regulation is prima facie evidence of negligence and places upon the violating party the duty of producing evidence to show a justifiable excuse for such violation, if he is to avoid the legal consequences of his act."

The disagreement on appeal centers on the matter of whether there was evidence in the record which would have supported this instruction. Defendant Raymond Hamilton testified that when he arrived at State Road 37 on County Road 650 North, he came to a complete stop and waited twenty to thirty seconds until cars approaching from the south had passed. Hamilton was wearing his glasses, which were required by the restriction on his driver's license. He observed other cars coming in the distance but concluded he had plenty of time to cross. He testified that he did not see Schubert's motorcycle or any light prior to the collision. Hamilton proceeded to cross the highway, and, as he entered the median, he started looking for traffic from the north. At that point he heard tires squealing, and, about a second later, Schubert and his motorcycle hit the side of the truck cab.

Schubert remembers nothing about the accident, but he testified that he believed that the lights on his motorcycle were activated when the key was turned to the on position. He further stated that he believed the motorcycle was in excellent condition and that, without exception, he drove it with the lights on.

Gary Miller, a member of the Johnson County Sheriff's Department, testified that he arrived at the scene shortly after the collision. He said that it was a bright, sunny day and that there was no obstruction of the view from Road 650 North toward the south down State Road 37. Miller further testified that he inspected the headlight to determine if it had been operating at the time of the collision, but the bulb was broken out. He stated that, if the bulb were operating, the light would have been on at the time of the collision, because the key was in the position for the light to be burning.

The parties have not cited, nor have we found, any Indiana case directly on point involving the question of what kind of proof is necessary to support an instruction regarding the duty to have an illuminated headlamp on a motorcycle. However, the defendants cite, by way of analogy, the case of Lawson v. Webster, (1962) 133 Ind.App. 296, 181 N.E.2d 870. In Lawson the defendant stopped her car at a stop sign at an intersection with a preferential highway. The plaintiff was approaching the intersection from the defendant's left, on the preferential highway. The plaintiff saw the defendant's car when it was stopped at the intersection, and there was evidence tending to show that the plaintiff's car would have been visible to the defendant. However, the defendant entered the intersection and, as the plaintiff swerved to avoid the defendant, struck the side of the plaintiff's car. The defendant tendered an instruction which explained the statutory duty to provide each motor vehicle with a horn and to give an audible warning with the horn when reasonably necessary to insure the safe operation of one's vehicle. The instruction was refused, and the jury returned a verdict for the plaintiff. The Appellate Court reversed and remanded the cause for a new trial, holding that there was evidence concerning the instruction regarding the use of a horn, that this issue was not covered by other instructions, and that the defendant, accordingly, was entitled to have the jury instructed on his theory of the case.

The court in Lawson was applying the familiar rule that, to determine whether a tendered instruction was erroneously refused, an appellate court must determine whether the instruction correctly states the law, whether there is evidence in the record which would support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions which were given. Dahlberg v. Ogle, (1978) 268 Ind. 30, 373 N.E.2d 159; Duchane v. Johnson, (1980) Ind.App., 400 N.E.2d 193.

Schubert cites Sheptak v. Davis, (1965) 246 Ind. 499, 205 N.E.2d 548, in support of his position that the evidence does not support Defendant's Tendered Instruction No. 7. In Sheptak a collision occurred involving the plaintiff, who was riding his bicycle on the sidewalk, and the defendant, who was

driving her car down an alley which crossed the sidewalk. A building at the intersection of the sidewalk and the alley obstructed each party's view of the other. The defendant tendered an instruction concerning a statutory duty to have a bell or other audible signaling device on a bicycle. The instruction was refused, and the jury returned a verdict for plaintiff. The trial court subsequently granted the defendant's motion for a new trial because of the refusal of this and other instructions. On appeal, the supreme court observed that there was no evidence that the defendant listened for a signal warning or that she could have heard a warning from an ordinary bicycle bell had the plaintiff given one. The court went on to state that contributory negligence will not be presumed, and that the defendant carries the burden of proof on that issue. The court ultimately reversed the granting of the motion for a new trial because the instructions in question were properly refused.

We are not persuaded that *Sheptak* is controlling in the case at bar. Here there is evidence that Hamilton looked toward the south before crossing the northbound lanes of State Road 37 and saw no motorcycle or light. There is also evidence that there was no obstruction of the view of State Road 37 toward the south from where Hamilton stopped on Road 650 North. From this evidence it reasonably could be inferred that Hamilton would have seen the light from Schubert's motorcycle headlamp had it been on.

In *Hall v. King County Fire District No. 43*, (1965) 67 Wash.2d 446, 408 P.2d 14, an intersectional collision took place involving the plaintiff's automobile and the defendants' fire truck. Although the collision occurred at dawn, it was still dark enough to require the use of lights. The fire truck's red flasher lights and siren were on, although the extent to which the siren was used was disputed. The plaintiff had thought he heard a siren prior to reaching the intersection, and he slowed down to about 40 m. p. h. (the speed limit was 60 m. p. h.) in order to look for the source of the sound. He saw nothing, so he proceeded at a reduced speed to the intersection of his street and that on which the defendants' truck was being driven. Then, about 100 feet from the intersection, the plaintiff spotted the fire truck. The truck did not stop at a stop sign at the intersection, and it collided with the plaintiff's automobile. A jury returned a verdict for the defendants on the plaintiff's complaint. On appeal, the plaintiff contended that there was not substantial evidence to support an instruction given to the jury dealing with the duty of displaying lighted headlights on motor vehicles after dark. The plaintiff argued that there was both positive evidence that his headlights were on and negative evidence that they were not on and that the negative evidence did not contradict the positive evidence. The Supreme Court of Washington proceeded to distinguish the principle argued by the plaintiff and cases cited in support of it:

"The rule of the *Hauswirth* and *Poland* cases must be related to the facts of each case. These cases pose circumstances wherein the witnesses were not so situated, or their attention was not so attracted, that in the ordinary course of events they would have been able to see the headlights in question. Such evidence was therefore speculative and could not overcome the positive evidence to the contrary.

"On the other hand, *where the witnesses are so situated, and their attention so directed, that in the ordinary course of events they would have been able to see the headlights,* as the record discloses in this case, *then the testimony would have probative value. Pollard v. Wittman*, 28 Wash.2d 367, 183 P.2d 175 (1947); *Schon v. Modern Woodmen of America*, 51 Wash. 482, 99 P. 25 (1909); 140 A.L.R. 530. Thus, a factual question was raised as to whether the plaintiff's lights were on at the time of the accident; and the giving of instruction No. 8 on this issue was proper." (Our emphasis.)

67 Wash.2d at 448, 408 P.2d 14.

*Hall* involved a situation where, in contrast to our case, the *giving* of an instruc-

tion pertaining to the duty to use headlights was upheld, but other courts have ruled on the question of whether the *refusal* of such an instruction was erroneous. In *Southworth v. Griffith*, (1971) Colo.App., 489 P.2d 1068, the plaintiff on his motorcycle and the defendants in their car approached each other on the same street at night. The defendants were attempting a left turn when the collision occurred. The plaintiff testified that he first saw the defendants' car when he was about 50 feet from the point of impact. The defendants, a driver and a passenger, both testified that they looked in the direction from which the plaintiff had come prior to turning, that they saw no lights coming from that direction, and that they did not see the plaintiff until just prior to the collision. A jury returned a verdict for the defendants. The plaintiff complained on appeal that an instruction given to the jury concerning a statute requiring the plaintiff to have his headlights on at the time of the collision had no factual basis. The Colorado Court of Appeals responded as follows:

"There is no question that this accident occurred at a time when lights were required by C.R.S.1963, 13–5–86, and that defendants had a right to rely on the premise that other vehicles on the street would be in obedience of this law. *Gallagher Transportation Co. v. Giggey*, 101 Colo. 116, 71 P.2d 1039. Where both defendants looked in the direction from which plaintiff's motorcycle was coming and in fact did not see any headlights, the inference that plaintiff did not have his headlights on is one which a jury could legitimately draw and this inference adequately supports the contributory negligence and headlight requirement instructions submitted to the jury. *Eagan v. Maiselson*, 142 Colo. 233, 350 P.2d 567."

489 P.2d at 1070.

In *Malavolti v. Meridian Trucking Co.*, (1979) 69 Ill.App.3d 336, 25 Ill.Dec. 770, 387 N.E.2d 426, the defendant truck driver and a companion had stopped their semi-tractors and trailers briefly in the parking lot of a restaurant located on the north side of an east-west highway when they decided to leave and head toward the east. At about this time, some time after 9:15 p. m. on a December evening, the plaintiffs' decedent left a service station about one-quarter of a mile to the east on the same highway, driving his automobile in a westerly direction. Before the defendant drove his truck out of the parking lot, his companion in the other truck, which was behind the defendant, looked into his side mirrors in the direction of the service station and saw the station but no traffic. While the defendant was turning left out of the parking lot, the decedent collided with the trailer of the defendant's truck as it lay across the westbound lane. The defendant testified that he did not see the decedent's automobile until shortly before the collision. A witness who spoke with the decedent before he left the service station testified that the decedent's automobile headlights were on when he left. The sheriff testified that the tail lights of the decedent's automobile were energized when he arrived at the scene, but the front of the automobile was demolished and he could not determine whether the headlights were on. A jury trial resulted in a verdict for the defendants, and, on appeal, the plaintiffs asserted that an instruction given the jury pertaining to the duty to have automobile headlights activated between sunset and sunrise was not supported by any evidence tending to show that the decedent's automobile headlights were energized. The Appellate Court of Illinois disposed of this contention in the following manner:

"From our reading of the record, there indeed was some evidence given during the trial to support the giving of the instruction. Dickey [the defendant's companion driver] testified that before Burton [the defendant truck driver] pulled out of O'Connor's parking lot he looked into his mirror and could see no traffic behind him on Route 26. Burton told Trooper Acuncius that he did not see Malavolti's [the decedent] car until it was 40 to 50 feet east of the speed limit sign. Sheriff Calbow testified that he was unable to ascertain whether or not Malavol-

ti's headlights were burning because the front end of his car was destroyed. It may very well be true that this evidence showing that Malavolti was driving without headlights is not very convincing, but what matters is not the probative value of the evidence but rather its existence as far as support for a jury instruction is concerned. The test is whether there is some evidence in the record to support the theory set out in the instruction. We feel that the evidence tendered meets the requirement of 'some evidence,' its probative quality notwithstanding. It is the province of the jury to decide how much weight this evidence is to be given." (Our insertions.)

69 Ill.App.3d at 340–41, 25 Ill.Dec. 770, 387 N.E.2d 426.

*Nickel v. Snider*, (1972) Tex.Civ.App., 484 S.W.2d 940, involved an intersectional collision between the plaintiff's automobile, which was proceeding west on a preferential highway, and the defendant's automobile, which was travelling north on a secondary road. The defendant testified that she stopped at the intersection in compliance with a red, blinking stoplight and a stop sign. She then proceeded into the intersection and was struck by the plaintiff's automobile, which was not required to stop. The defendant testified that the first time she saw the plaintiff's vehicle was when it hit her. We are also told in the opinion that the defendant later testified that "she always looked just 'straight ahead.'" 484 S.W.2d at 943. The jury found that the defendant failed to yield the right of way and failed to keep a proper lookout, both of which acts were a proximate cause of the collision. The Court of Civil Appeals of Texas considered the defendant's contention that whether or not the plaintiff's headlights were on was a matter which should have been presented to the jury.

"Appellant in her point of error No. 8 complains because the trial court refused to submit an issue on whether or not Charles K. Snider was operating his vehicle without the headlights turned on. She argues that there was evidence authorizing submission of the issue because: 1) Defendant testified that she did not see plaintiff's car approaching the intersection; and 2) because the investigating officer testified that he could not tell whether the lights were burning on the Snider car or not at the time of the accident, since the lights were knocked out by the collision when he arrived at the scene. This was all of the evidence. We hold that this was no evidence that Charles K. Snider was operating his automobile without the headlights turned on. The point of error is overruled."

*Id.* at 945.

At first glance, *Nickel v. Snider* might appear to contradict *Hall, Southworth,* and *Malavolti, supra.* However, in each of those three cases there was at least one witness who was so situated and whose attention was so directed that in the ordinary cause of events he would have been able to see the plaintiff's headlights. *Hall v. King County Fire District, supra.* In *Nickel,* on the other hand, we are told that the plaintiff looked straight ahead at the intersection and was found to have failed to keep a proper lookout.

■ We are persuaded that there were evidence and reasonable inferences derived from the evidence to support Defendants' Tendered Instruction No. 7. Defendant Hamilton looked in the direction from which Schubert came, saw other vehicles approaching, and waited until those other vehicles passed. He saw more vehicles in the distance but felt that he had plenty of time to cross over those lanes. He saw neither the motorcycle nor the light. Hamilton's view was not obstructed, and he was wearing glasses as required by his license. The investigating deputy sheriff did not positively determine whether Schubert's headlamp was on prior to the collision, because the bulb was broken out. To require a defendant to show more than this when trying to prove a negative, in order to obtain an instruction on a statutory duty, would be to place an undue restriction upon his ability to present his theory of the case.

We further find that the instruction correctly states the law. *Davison v. Williams*, (1968) 251 Ind. 448, 242 N.E.2d 101; Ind. Code 9-8-9-2. The jury was given a general instruction concerning contributory negligence but none pertaining specifically to the duty to illuminate a motorcycle headlamp while the motorcycle is in operation. Accordingly, the trial court erroneously refused to give this instruction. *Dahlberg v. Ogle; Duchane v. Johnson, supra.*

We reverse the judgment of the trial court and remand the cause for a new trial.

NEAL and ROBERTSON, JJ., concur.