Harold L. Ross and Sylvia J. Ross, Plaintiffs-Appellees, v. Danter Associates, Inc., Defendant-Appellant, and Robert L. Daniels, Defendant.

Gen. No. 67–82.

Third District.

November 22, 1968.

Bernard Susman, of St. Louis, Missouri, and Norman Walker, of Rock Island, for appellant.

Van Der Kamp & Crampton, Ira Melaas, Jr., and Robert Boeye, of Rock Island, for appellees.

STOUDER, J.

In this action for damages of breach of contract, the Circuit Court of Rock Island County sitting without a jury, entered judgment in favor of Plaintiffs, Harold Ross and Sylvia Ross, against Danter Associates, Inc., Defendant, for $84,839.42 from which judgment the defendant appeals.

Defendant is engaged in the design, construction and development of real estate projects. In April, 1964, Robert Daniels, President of defendant corporation and a resident of St. Louis, Missouri, commenced discussions with the plaintiffs, residents of Rock Island, concerning the development and construction of a Travelodge motel and restaurant. Prior thereto Daniels had constructed other motels for the Travelodge Company. In May, 1964, a letter of intent was executed by the parties preliminary to the negotiations and execution of the arrangements incident to the development of a tract of land in Rock Island County for a motel and restaurant. Thereafter plaintiffs exercised options on four parcels of land in Moline, Illinois, upon which the motel and restaurant were to be constructed. The parcels were purchased for $140,000 and title was taken in the names of

the plaintiffs. On November 6, 1964, the contract which is the subject of this litigation, was executed. It provided in great detail that the defendant would construct two buildings on the property of plaintiffs, one a freestanding restaurant together with the equipment therefor, and the second a motel building for which the plaintiffs agreed to pay to the defendant $412,000. Neither of the buildings was ever constructed and this action for breach of contract was filed by the plaintiffs in July, 1965.

In seeking to reverse the judgment of the trial court, defendant argues first, that as a matter of law, the plaintiffs were not ready and willing to perform their obligations under the contract, second, that defendant had performed and was ready, willing and able to perform all its obligations under the contract, third, that the court erred in denying defendant the right of surrebuttal, fourth, that the court erred with respect to the application of rules regarding damages and fifth, that the judgment of the court was improperly entered in favor of Sylvia Ross since she had not signed the contract.

Defendant first argues the trial court erred in failing to hold as a matter of law that plaintiffs were not "willing and ready" to perform their obligations under the contract as alleged in their complaint which allegation they were bound to prove. This argument is based in part upon a provision in the contract. After providing for progress payments the contract provides "All payments subject to requirements of interim financing disbursement agreement." Defendant argues first, plaintiffs had failed to comply with the requirements of the interim financing agreement, second, that plaintiffs could not comply with such requirements and third that plaintiffs failed to prove their financial ability to carry out their obligations under the contract.

Plaintiffs had discussed and arranged for a loan to finance the project with the Moline National Bank in the amount of $412,000, the amount which plaintiffs agreed to pay to defendant. The proposed loan was both a construction or interim financing loan as well as a long-term loan. In addition to the security of a first lien, the bank among other things, required the assignment of the lease between plaintiffs and Travelodge, the assignment of plaintiffs' interest in a joint venture which would operate the motel and restaurant, a contractor's performance bond and the approval of such documents by the bank or its attorney as they related to the security interest of the bank.

On January 7, 1965, pursuant to a request for a progress payment made by Daniels in behalf of defendant, a meeting was held in the offices of the Moline National Bank. The request for a progress payment was in the amount of $34,809 and was made up largely of engineering and architectural expenses. In addition, it included cost of site preparation, demolition of a small building, miscellaneous disbursements and $5,000 which defendant had deposited with an equipment supplier for equipment as selected by plaintiffs. The sum of $31,327 was disbursed by the bank and paid to defendant, the bank retaining ten percent until completion of the job as is customary. At this meeting, Daniels had a contractor's surety bond which had been approved by a commercial surety in favor of Peterson Roberts Construction Company, which bond had not been executed by the construction company. Daniels expected the surety bond to be executed by Peterson Roberts but, in fact, it was not so executed and no other contractor's surety bond was ever executed or delivered to the plaintiffs or the bank. At this meeting the President of the bank indicated that no future disbursements would be made from the loan fund until there had been compliance with the bank's requirements, which statement was confirmed by letter of the same

360

date. No additional request for progress payments was ever made by defendant.

Admittedly, the financing requirements of the bank had not been completed and according to the argument of the defendant, such fact is fatal to the plaintiffs' right to recover. We agree with the general principle cited by the defendant that a plaintiff must allege and prove performance of all conditions precedent and a tender or offer to perform those conditions which are concurrent or mutual and further, we agree with the general proposition that where two parties to a contract are in default neither can recover. Cincinnati, I. & W. R. Co. v. Baker, 130 Ill App 414, and 17 Am Jur2d, Contracts, § 358, page 797. However, we do not regard any of the cases cited by defendant as authority for holding that the provision in question is either a condition precedent or a mutual condition. According to the terms of the contract, defendant's obligation to perform was independent of any obligation on the part of the plaintiffs either prior to or contemporaneous with the completion of requirements of the interim financing. Even if such were not the case, we believe the defendant by its conduct either waived or excused any further efforts by plaintiffs to complete the financing arrangement. The defendant requested and accepted a progress payment disbursed by the lending agency with full knowledge that the financing requirements had not been concluded. Furthermore, the defendant never secured and executed a contractor's performance bond. In our view plaintiffs were amply justified in concluding from defendant's conduct that further action in completing the financing arrangement would indeed have been useless action.

Defendant also argues in respect to the willingness and readiness of the plaintiffs to perform their contract, that the plaintiffs could not comply with the bank's financing requirements and since they needed a loan they were not in a position to perform their obligation. Fur-

361

ther, according to defendant, plaintiffs failed to introduce evidence as to their ability to perform their obligation. Initially we note that defendant is in a rather anomalous position. In effect, defendant is suggesting that a project which it proposed and promoted is financially unsound. Admittedly, the lease and joint venture agreements were not finalized. However, they were substantially completed. Defendant has called to our attention many irregularities and areas of incompleteness in the agreements and concludes, therefore, that the requirements of the bank could not be satisfied. However, the President of the bank and its attorney each testified that the construction loan was progressing in normal fashion and neither indicated any likelihood or probability that the loan would not be concluded in due course. In this connection defendant's attorney made an offer to introduce into evidence certain documents pertaining to the operation of the restaurant-motel for the purpose of asking the President of the bank whether such documents had been assigned to the bank. The trial court declined such offer and its ruling is assigned as error. We find no error in the court's ruling. The President of the bank had already testified that no documents respecting the operation of the motel and restaurant had been assigned to the bank and, therefore, identification of the documents for such purpose would have been cumulative and of no particular assistance to the court. In addition, except for a supplemental joint venture agreement, the other documents were not relevant to the issues since there was no contention that their assignment was a requirement of the bank.

As indicated above, we believe there is ample evidence that plaintiffs could have secured a loan in the amount required. The value of plaintiffs' land was substantial and their equity in the completed project would have been substantial. We believe that a sufficient show-

ing was made regarding plaintiffs' financial ability to carry out their obligation under the contract.

The next question which we will consider is which of the parties breached the contract. Defendant claims it was ready, willing and able to perform the contract but was prevented from so doing by the plaintiffs. The plaintiffs, on the other hand, contended that defendant refused to construct the buildings and supply the equipment as agreed.

The main thrust of plaintiffs' evidence is that after the execution of the contract, the defendant learned the two buildings and restaurant equipment could not be constructed and supplied in Moline for the agreed price. As a consequence, the defendant proposed to build a combined restaurant and motel unit. In its turn the defendant attempted to prove by the evidence that the two buildings and equipment could be constructed and supplied for the price agreed upon and that its offer to do so had been declined by plaintiffs.

The defendant has made several assignments of error respecting evidence and in order to consider such errors a brief summary of the evidence relating thereto is required.

■ The defendant was not in the business of actual construction and it appears that it expected Peterson Roberts Construction Company of Rock Island to undertake the actual construction. Peterson Roberts never agreed to do this. After many complaints of plaintiffs that work had not commenced as provided by the contract, defendant telegraphed plaintiffs as follows: "In view of apparent inability to negotiate with suppliers, it is our decision to build Moline structures with our own construction company, bonding same as required by Ross and Bank. Plan to commence work Tuesday or Wednesday; will confirm details verbally . . . ." A contract dated March 1, 1965, between defendant and Buckley Construc-

363

tion Company was introduced as an exhibit by defendant in support of his contention that the contract could be performed within the price agreed. Whether such contract did contemplate performance in accord with the contract between plaintiffs and defendant is a controverted issue. Buckley, President of Buckley Construction Company, came to Moline shortly after the middle of March for the purpose of commencing the construction, according to the testimony of Daniels. Buckley stayed a few days and further, according to Daniels, Buckley called Daniels and stated that plaintiffs would not go ahead with the building. Harold Van Der Kamp, attorney for plaintiffs, who handled most of the transactions during the negotiations, testified that Buckley had called at his office shortly after the middle of March, 1965. At such meeting, according to Van Der Kamp, Buckley indicated he would build only a combined restaurant and motel building, that his contract did not include equipment for the restaurant, that Buckley Construction wanted a contract directly with plaintiffs and that the progress payment made to defendant should be refunded. Since Buckley did not testify, defendant argues Van Der Kamp's testimony should have been excluded since the statements were hearsay. We find no merit to such contention. In its telegram defendant referred to Buckley Construction Company as "our" construction company and in his direct testimony Daniels indicated that Buckley was sent to Moline as "his direct representative." Under such circumstances, the conversation with Buckley cannot be regarded as hearsay. Of further significance regarding defendant's objection is the fact that Daniels himself first introduced into the case the telephone call in which Daniels testified that Buckley told him plaintiffs would not continue. It is difficult to see how the defendant is in any position to complain concerning evidence which it first introduced.

■ Daniels in his testimony admitted that during February and March, new plans were prepared at his request, not plaintiffs', for the combining of the restaurant and motel in one building. Shortly after the meeting with Buckley, these plans were submitted to Van Der Kamp, but plaintiffs were unwilling to agree to the modifications. Where problems have arisen it cannot be said that an effort to modify a contract is in and of itself a breach of the contract. Nevertheless, when in fact the buildings are not built, it can be considered with all other facts in determining the responsibility for the failure of the contract to be performed.

■ Over objection of defendant the trial court permitted the introduction of a letter from Daniels to Van Der Kamp dated March 29, 1965. The letter indicated that a check was enclosed without indicating any purpose therefor and also indicated that building the restaurant as a separate unit was a problem and if built a total payout might be $25,000 or $50,000. Defendant objects to the admission of this letter on the grounds that it was a compromise offer and hence not relevant to the issue. We agree with the general principle that the law favors compromises and in order to promote such goal, offers of compromise or settlement are as a matter of policy, inadmissible. After reviewing the authorities relied upon by defendant, Bowman v. Illinois Cent. R. Co., 11 Ill2d 186, 142 NE2d 104, and Cedar Rapids & Iowa City Railway & Light Co. v. Sprague Elec. Co., 280 Ill 386, 117 NE 461, we agree with the trial court that such letter was admissible since it was not an offer of compromise or settlement.

Plaintiffs presented the testimony of Charles and Russell Roberts of Peterson Roberts Construction Company, who testified during plaintiffs' main case that the cost of constructing the two buildings would be $500,200. The purpose of such testimony was twofold, first, to present

365

reasons for defendant's failure to construct the buildings and second, to establish the damages they had sustained. These witnesses testified that their estimates had been prepared in cooperation with Carl Smith, project engineer for defendant, the latter having taken office space with Peterson Roberts Construction Company for two or three months commencing in December, 1964.

Defendant also introduced an extensive cost analysis indicating that the two buildings and equipment could be constructed and supplied for the agreed price of $412,000. The purpose of this evidence was also twofold, first, to indicate that he had no reason for not complying with the terms of the contract and second, to refute the plaintiffs' contention that they had sustained damage.

On rebuttal, the Roberts presented a breakdown of their estimates and subcontractors' bids in support thereof, prepared early in January, 1965, and according to the witnesses, communicated to Carl Smith at the time. Roberts also testified in great detail concerning the cost analysis of defendant indicating respects in which the witness believed the cost analysis of defendant was inaccurate, inconsistent and incomplete.

On appeal the defendant has devoted a large portion of his brief to areas of inconsistencies and inaccuracies between the cost estimates presented by the parties in support of its assertion that the testimony in behalf of plaintiffs should be deemed unbelievable. Notwithstanding defendant's insistence to the contrary, we believe this is a factual issue dependent upon the credibility to be accorded the testimony. This is the function of the trial court to determine the credibility of the evidence. It is apparent from the judgment that the trial court did not place complete reliance on the testimony of either party in this regard. Furthermore, we believe that the trial court's resolution of the factual issues in favor of plaintiffs on the issue of liability is

amply supported by the evidence and not against the manifest weight of the evidence.

After the presentation of the plaintiffs' last rebuttal witness, a conversation ensued concerning the admission of exhibits. During such conversation the following colloquy took place. "Mr. Susman: There is a possibility we might want to have some surrebuttal. May we have a few minutes to go over our notes? Court: I don't understand what you mean. Mr. Melaas: They feel they want to have some surrebuttal. Court: No, you don't get another turn. The evidence is over. Mr. Susman: For the record, I would like to make an objection that perhaps we might want to put on some surrebuttal testimony and I take it you deny my request and I would like the record to show that. Court: Okay, the proposal to produce further evidence in defense is overruled." In this court defendant contends the trial court erred in denying it the right of surrebuttal. Conceding that the right of surrebuttal is discretionary, the defendant asserts that the trial court abused its discretion.

The purpose of surrebuttal is to permit the defendant to introduce evidence in refutation or opposition to new matters interjected into the trial by the plaintiff on rebuttal. City of Sandwich v. Dolan, 42 Ill App 53, affd 141 Ill 430, 31 NE 416, and City of Rock Island v. Starkey, 189 Ill 515, 59 NE 971. In other words, fairness requires that the defendant be permitted to oppose new matters presented by plaintiff for the first time which the defendant could not have presented or opposed at the time of the presentation of his main case. Contrarywise, the purpose of surrebuttal is not the introduction of evidence merely cumulative to that presented by the defendant in its original presentation. City of Sandwich v. Dolan, supra, and Chicago City Ry. v. Carroll, 206 Ill 318, 68 NE 1087. It follows that the defendant has no right to present surrebuttal evidence merely because the plaintiff has presented rebuttal evidence.

Since surrebutal is only properly permitted where the plaintiff has presented new matters on rebuttal which the defendant desires to oppose we believe that such new matters must be called to the attention of the trial court. Otherwise, there is no basis for granting the request for surrebuttal nor any basis for invoking the discretion of the trial court. Such new matters need not be called to the attention of the trial court in any formal fashion, but we believe the trial court must be given the opportunity and basis for determining whether new matters have indeed been presented on rebuttal. Plaintiffs' attorney would appear likewise entitled to oppose the defendant's request on the basis that no new matters had been introduced by way of rebuttal. That the defendant should be required to bring such new matters to the attention of the trial court is fair and reasonable both procedurally and substantively.

Defendant seeks to excuse its failure to present any reason in support of its request for surrebuttal for the reason that its principal attorney practiced primarily in Missouri and was unfamiliar with Illinois law or practice. We do not believe that such reason is a sufficient basis for requiring a retrial of the issues. Furthermore, defendant's principal attorney was assisted by experienced local counsel.

Defendant has called to our attention several respects in which it believes the plaintiffs presented new matters in their rebuttal testimony. In view of our decision that these matters should first have been called to the attention of the trial court, no useful purpose would be served in discussing them in this opinion.

Defendant also argues that the court erred in the assessment of damages. As we have said before, defendant endeavored to show by its evidence that the two buildings could be constructed and the restaurant equipped for the contract price of $412,000. Plaintiffs endeavored to show by their evidence that the cost of

constructing the two buildings was $500,200, that the cost for equipping the restaurant would be $33,409.20, and that had the project been completed they would have been entitled to a refund of $3,500 paid to the defendant at the time of, and in accord with the terms of the letter of intent. Thus, the range of testimony concerning damages is zero as contended by defendant and $123,859.20 as contended by plaintiffs.

As we have said before, the court committed no error in considering the evidence of each party submitted on this issue. Defendant argues that the award of damages was erroneous in two other respects. In its memorandum opinion the trial court in discussing the issue of damages, indicated that the $31,327 progress payment had not been earned by defendant and hence the damages should include the recovery thereof by plaintiffs. Also, the trial court indicated the damages should include the $3,500 paid at the time of the execution of the letter of intent. In addition, the trial court indicated that in considering the range of the testimony it was inclined to accept defendant's statement of its prospective loss of $50,000, which figure was mentioned in defendant's letter of March 29, the letter which defendant asserts was improperly admitted as an exhibit. Reliance on the latter letter and its conclusion regarding the progress payment are assigned as errors by defendant.

In their complaint the plaintiffs alleged they had made a progress payment to defendant and that it was not earned. Defendant in its answer denied that the progress payment was not earned, insisted that it had been earned and introduced evidence in support of such contention. In their prayer for damages plaintiffs requested they be awarded damages in the amount of $150,000 without relating such demand to the progress payment. The question of whether a payment has been earned is not a proper issue in the determination of damages for breach of contract. We believe the allegation

369

in the complaint was intended to negate any contention that defendant was entitled to the progress payment either by virtue of the terms of the contract, the conduct of the parties or some other theory such as quantum meruit. The rule with respect to the measure of damages is, we believe, properly stated by defendant, namely, the ". . . difference between the cost of constructing, by contract, the building the contractor agreed to put up, and the fair cost market price of erecting such building." Bertram v. Berquist, 153 Ill App 43; see also Schuyler County v. Missouri Bridge & Iron Co., 256 Ill 348, 100 NE 239. Notwithstanding its recognition of the proper rule of damages, the defendant insisted in the trial court and continues to insist in this court that it had earned such progress payment concluding that the trial court's indication to the contrary thereby renders its judgment improper.

In the application of the proper rule of damages applicable to this situation we believe the question of whether the contractor has earned any payments which he has received is irrelevant. The following example may serve to illustrate the application of the rule. Suppose a contractor has agreed to build a building for an owner for $400,000. Suppose further the contractor has partially constructed the building and has received $200,000 and at this point refuses or is unable to continue the contract and is hence in breach of contract. Suppose, also, that at this point the reasonable cost of completing the building would be $300,000. In determining the damages sustained by the owner, the cost of performance would be, first, the amount paid to the contractor, $200,000, plus the cost of completion, $300,000, or a total of $500,000. The difference between this amount, $500,000, and the contract price $400,000, or $100,000, would be the damages sustained by the owner. In this example it may well have been that the contractor actually incurred expenses of $200,000 for labor and ma-

terial and he may consider that he earned such amount. The rule as so applied gives due effect to the partial performance by both contractor and owner independently of any issues regarding the earning of the partial payment or the refund thereof.

We believe the responsibility for interjecting the issue of whether the progress payment was earned or not was as much the fault of defendant as of plaintiffs. We also believe the trial court applied the proper rule of damages and that its comments regarding the earning of the progress payment represents a practical application of the proper rule in terms designed to respond to defendant's contentions. The judgment in the amount of $84,839.42 is well within the range of the testimony and substantially less than the damages testified to by plaintiffs' witnesses. The substance of the trial court's comments on the various items of damage is that it believed the difference between cost of completion and contract price would be $50,000 to which should be added payment already made, additional cost of securing performance, and thereby arrived at a difference between total reasonable cost of securing performance and the contract price.

■■■ As we have said earlier, we believe the court did not err in admitting the letter of March 29 in which defendant indicated that building the two buildings might cost him $25,000 or $50,000. We also note that there is testimony concerning conversations with Daniels in which the latter indicated that it would cost him as much as $70,000 to construct the buildings. As we have heretofore observed, the measure of damages does not include the cost or loss of the contractor, but we believe such admissions are relevant to the credibility of the cost estimates and are also relevant to a determination of damages within the range of the testimony relating thereto. Accordingly, we find no error in the assessment of damages by the trial court.

Lastly, defendant objects that the court erred in entering judgment in favor of both Sylvia and Harold Ross urging in support thereof that Sylvia Ross did not sign the contract of November 6, 1964. We find no error in this respect since it was not an issue in the case. Sylvia and Harold Ross were designated as plaintiffs in the complaint which alleges that they entered into the contract with defendant. Such allegation was admitted by defendant in its answer and the issue was not controverted at the trial. In our opinion this issue is raised too late and we find no error in the judgment of the court with respect thereto.

For the foregoing reasons the judgment of the Circuit Court of Rock Island County is affirmed.

Judgment affirmed.

ALLOY, P. J. and CULBERTSON, J., concur.