GARY WELLS et al., Plaintiffs-Appellees, v. ROBERT L. MINOR, Defendant and Third-Party Plaintiff-Appellant (Jerry Suttles, d/b/a Suttles and Pratt Concrete Contractors, Third-Party Defendant-Appellee).

Fourth District No. 4—90—0679

Opinion filed September 12, 1991.—Rehearing denied October 17, 1991.

Rammelkamp, Bradney, Dahman, Kuster, Keaton & Fritsche, P.C., of Jacksonville (Larry D. Kuster and Maria M. Gonzalez, of counsel), for appellant.

Herring & Bell Law Offices, of Winchester (Lois A. Bell and Richard E. Mann, of counsel), for appellees Gary Wells and Debra Wells.

Bellatti, Fay, Bellatti & Beard, of Jacksonville (Daniel J. Beard and Timothy E. Ruppel, of counsel), for appellee Jerry Suttles.

PRESIDING JUSTICE LUND delivered the opinion of the court:

On May 4, 1990, a jury sitting in the circuit court of Scott County found for plaintiffs Gary and Debra Wells and against defendant Robert Minor (Minor) in a breach-of-contract action involving the building of a house. Third-party defendant Jerry Suttles (Suttles) had earlier prevailed against Minor in a summary-judgment proceeding. On September 4, 1990, the court entered judgment for the plaintiffs in the amount of $39,580. Minor now appeals.

On April 13, 1989, plaintiffs filed a complaint for breach of contract in the circuit court of Scott County. The complaint was eventually amended and alleged that (1) on September 13, 1988, they and Minor entered into a contract to build a house; (2) plaintiffs have performed their obligation by making the required monthly partial payments; (3)

Minor breached the contract in that construction was not performed in a workmanlike manner and was unsatisfactory; and (4) Minor abandoned the project without completing the house. The complaint pursued four grounds of recovery: count I sought the cost of repairs of the defects; count II sought the diminution in value of the house; count III sought the costs of completion of the house; and count IV sought loss of use of the house.

On September 15, 1989, Minor filed an answer and a counterclaim against plaintiffs. In the counterclaim, he alleged he did not finish the project because plaintiffs breached by failing to make the required contract payment, and that he has always been ready, willing, and able to complete the project. Minor sought damages of $32,416.14, which is the difference between the contract price and what plaintiffs had already paid.

On December 22, 1989, the court gave Minor permission to file a third-party complaint against Suttles, which he did. On April 20, 1990, Suttles filed a motion for summary judgment, asserting that Minor waived any claim against him. The circuit court agreed and entered judgment for Suttles on May 1, 1990.

The jury trial commenced on May 2, 1990. The first witness was plaintiff Gary Wells. He stated that in September 1988 he entered into a contract with Minor for construction of a tri-level house with a basement under the ground-level portion. The contract required that the work be performed in a workmanlike manner and be completed within 90 days. The contract also provided that bills were to be supplied by the first day of the month, and that he was to make payment to Minor by the 10th day of each month.

The first bill he received was around November 2, 1988, in the amount of $7,136.50. This was for the foundation and basement floors. He paid it. The next bill he received was around December 5, 1988, in the amount of $24,978.36. This he also paid.

He first became concerned that there was a problem when the two-by-four framing was put up. He noted it just did not look right, and the walls looked crooked and bowed. He received the third bill around December 20, 1988, which was for $21,877.27. On December 30, 1988, he had a meeting with Minor at the building. They went through the house, and he told Minor his various concerns. Minor explained to him the foundation was out of square, and they tried to correct that when they built the frame on top of it.

Wells explained that the various problems with the house were as follows: (1) the floor in the garage was cracked into three pieces; (2) there was a water leak in the kitchen; (3) there was a water leak

around the patio door; (4) the kitchen wall was out of plumb seven-eighths of an inch; (5) the wall between the kitchen and dining room was three inches off center; (6) the living room doorway was not square; (7) the wall between the stairs bowed out, as did the living room wall and several others; (8) various other walls are out of plumb and out of square; (9) the drywall was bulging on several walls; (10) the dirt beneath the patio had settled out; (11) the dirt under the sidewalk had settled out and the sidewalk was cracked; (12) two of the gabled ends of the house had bows in them; and (13) he was concerned that the siding should have lapped the other way. Minor refused to make the corrections and stopped work on the house. Wells did not pay the third bill.

Wells admitted he found the work generally acceptable as it proceeded. When he became concerned, he talked to Minor about the problems and asked to have them fixed. However, Minor stated he was not going to fix them and walked out. Wells obtained estimates on completion and repair of the house from three contractors, with Truman Short having the highest.

Dale Coffman was foreman of Minor's crew on plaintiffs' house. He explained that the house had an eight-foot basement and a four-foot basement. After these were poured, he measured them. The eight-foot basement was square. The four-foot basement was 1½ inches out of square. A wall in the four-foot basement was out of plumb. Also, on one wall, the corner was one inch higher than the rest of it. He stated the fact that the foundation was out of square is not a problem if the main part of the house is kept square as it is being built.

Truman Short has worked as a residential home builder for 41 years. He is familiar with the cost of material and labor in Scott County. He examined plaintiffs' house to come up with an estimate to complete and repair the structure. His estimate was $29,929. He explained what items needed to be done to complete the house and what items needed repair. His examination revealed the foundation was out of square, and he stated he would not build on that foundation without a full renegotiation with the owner. If the foundation walls were out of plumb or had one side higher than the other he, as a builder, would have required them to be repoured. He can think of no way to repair the foundation without removing or replacing it. He also found that various aspects of the job were not performed in a workmanlike fashion.

Short admitted that concrete work can be difficult and sometimes can crack through no fault of anyone. He acknowledged it had been seven years since he had been a general contractor on a house. He also

admitted that many times walls are slightly out of plumb, and this does not mean the work is unworkmanlike. However, he noted that in this case, they are more than slightly out of plumb.

John Rutherford is in the real estate business and has done appraisals for 15 years. The majority of his appraisals in recent years have been in Scott County. It was his opinion that if the house was completed and the defects fixed, it would have a fair market value of $62,500. If it was finished without fixing the defects, his opinion is that the value would be $42,000. It was his opinion the fair rental value of this house, if completed, would be between $400 and $450 per month.

Minor testified he is a builder, developer, and realtor, and that he has been involved in construction for more than 30 years. In September 1988 he signed a contract with Wells to build a tri-level home for $64,531. Construction began on September 27, 1988.

Suttles, the subcontractor, poured the foundation walls. The result was that one wall in the four-foot basement was out of plumb and out of square. Two other walls were out of plumb and one was out of level. Minor discovered this problem within a day or two of Suttles' work. Minor explained that he has built 13 homes using the same design, and that in every home the walls were not exactly plumb. It is acceptable to continue building on the walls, as long as they are not so out of plumb as to cause a life-threatening situation. It was his opinion that the condition of these walls are not life threatening, and that the house would be structurally sound if built on them. He explained the walls would be straightened out by using furring strips when finishing the house, which is common practice.

After the problems were discovered, he met Gary Wells at the house and explained the problems. At one meeting, they discussed the lack of plumbness and, at another, they discussed the fact that the house was out of square. He told Wells they could either get the foundation repoured or work around it. He told Wells it would take time to get Suttles back to repour. Wells stated that he wanted to be in the house by Christmas. Minor told him they would have a hard time making the walls plumb, and that the rooms could only be made square by using thicker walls, which would reduce the amount of room space. Wells opted to proceed with the house.

Around the first of November 1988, Minor sent a bill to the plaintiffs for $7,136.50. This was for the footings, foundation, and basement floor. They paid on time, and he then paid Suttles. Minor stated that, at times, if the homeowner is unhappy with the work, he has held back a portion of the subcontractor's pay as a settlement. If plaintiffs had

complained about the foundation, he would not have paid Suttles until the matter was resolved. On November 28, 1988, a second bill was sent to plaintiffs. This was paid on December 8, 1988. He gave them his third bill around December 20, 1988.

Minor's discussions with plaintiffs concerning the alleged defects culminated in a December 30, 1988, meeting. Minor had sent the bill on December 28, 1988, in response to a discussion he had with Robbie Barton, the drywall subcontractor. He had become concerned the plaintiffs were not going to pay his bill.

At the meeting on December 30, 1988, plaintiffs began by pointing out the defects of which they did not approve. Minor told them the problems could be repaired and explained how. He stated that if they paid his third bill, he would repair them at no cost. Plaintiffs told him their attorney had instructed them not to pay until all the repairs were done. He explained to them that payment was necessary to enable him to pay his suppliers. They did not seem concerned. Minor then left the job and did not go back. Minor never heard from the Wellses, nor did they pay the third bill. It was Minor's opinion that all the repairs necessary could be reasonably made. He estimated it would take 10 days to complete the house and two days to make the repairs. He believed Short's estimate was unreasonable, because it was too high and also included new items, such as storm doors, which were not listed in the original contract.

Henry Flitz works for Farmers Home Administration and has been making real estate appraisals during that time. He appraised the property at $89,747, which included the value of the land upon which the house is located. He allowed $2,000 for that, which leaves the house appraised at $87,747.

Thomas Chumley testified by evidence deposition that he has been involved in the construction business for 30 years. He examined the house and discussed the various necessary repairs. Generally, he felt that construction of the house was done in a workmanlike manner.

Robbie Barton, a drywall contractor, testified that he had some problems with the drywall because one room was not square. However, he explained that this is not uncommon. About a week before Christmas, he spoke with Gary Wells. Wells said he was going to make Minor sweat to get his money. Wells was mad at Minor over some allowances for cabinets. Barton told Minor of this conversation. He denied ever saying that this was the "crookedest" house he had worked on.

The jury found for plaintiffs, returning verdicts of zero dollars for cost of repair; $20,000 for diminution in value; $17,330 for cost of completion; and $4,500 for loss of use. At the post-trial motion hearing,

the court lowered the cost-of-completion damages to $15,080, with all other damages staying the same. This appeal followed.

Minor raises three primary issues on appeal. He first maintains the jury was misinstructed as to the relevant measure of damages, due to the tendering of plaintiffs' instructions and the denial of his own. He next maintains the jury's verdicts were against the manifest weight of the evidence. He also maintains the court erred by granting Suttles his motion for summary judgment.

## I. Jury Instructions: Preserving Claims Of Error

Initially, plaintiffs maintain the jury instruction arguments are waived. They observe it is well established that failure to object at trial to an asserted jury instruction waives the question. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 543, 440 N.E.2d 1248, 1251; *Malavolti v. Meridian Trucking Co.* (1979), 69 Ill. App. 3d 336, 342, 387 N.E.2d 426, 430.) Further, the objection must be specific so as to inform the court of its basis. *Malavolti*, 69 Ill. App. 3d at 342, 387 N.E.2d at 430.

■■ Admittedly, the record does not indicate a specific objection to the instructions, nor does it show most of the jury instruction conference. However, immediately prior to the instructions conference, the parties argued Minor's motion for directed verdict. In that motion, Minor vigorously argued the issue concerning the proper measure of damages which he now pursues. We believe under the facts of this case, since it may be unrealistic to expect counsel to reargue issues the court had just denied, that application of the waiver doctrine is inappropriate. We note this entire question could have been avoided by a simple objection by counsel to the instructions without the need to reargue the merits and, believing this is the better practice, we encourage counsel to do so in the future.

## II. Instructions On Damages

On the merits, it is Minor's contention that the jury was misinstructed as to the proper elements of plaintiffs' damages. The jury was instructed that: (1) on count I, the appropriate measure was "the amount of money required to repair and correct the work which the defendant has performed"; (2) on count II, the appropriate measure was the diminished value of the house if it is completed with the present defects; (3) on count III, the appropriate measure was the amount of money which plaintiffs must expend to complete the house; and (4) on count IV, the appropriate measure was the reasonable rental value of a comparable house for the period of time during which plaintiffs were denied use of the new house.

Minor presents two basic arguments of error. The first is that the expression of the relationship between the costs of repair and diminution of value is improper. The second is that all the damages are subject to the contract price, and only those amounts which require plaintiffs to pay more than the contract price should be awarded.

### A. *Assessing Damages For Defects: The Cost of Repairs is the Proper Measure Unless it Exceeds Diminution-in-Value Figures Under Recognized Exceptions*

It is Minor's position, in regard to the cost-of-repair/diminution-in-value question, that the proper procedure in calculating damages is to look first to the cost of repair. Only in certain circumstances can the diminution in value be used. He maintains the jury was not so instructed, and this was error. He is correct.

In *Park v. Sohn* (1982), 89 Ill. 2d 453, 433 N.E.2d 651, the court addressed this very question. It stated:

> "Here the plaintiffs brought an action seeking damages for defects found after the conveyance of the property. The recovery of damages is an appropriate remedy. The measure of damages should be the cost of correcting the defective conditions. If, however, [1] the defects could be corrected only at a cost unreasonably disproportionate to the benefit to the purchaser, or if [2] correcting them would entail unreasonable destruction of the builder's work, the amount by which the defects have reduced the value of the property should be the measure of damages. See *Mason v. Griffith* (1917), 281 Ill. 246, 256; *Witty v. C. Casey Homes, Inc.* (1981), 102 Ill. App. 3d 619, 624-26; *Hanavan v. Dye* (1972) 4 Ill. App. 3d 576, 580." (*Park*, 89 Ill. 2d at 464-65, 433 N.E.2d at 657.)

Thus, it is clear by this language that the appropriate recovery is first the cost of repairs, and that diminution in value is appropriate only in those two limited circumstances, *i.e.*, only if exceeded by the cost of repairs. See also *Village of Pawnee v. Azzarelli Construction Co.* (1989), 183 Ill. App. 3d 998, 1022, 539 N.E.2d 895, 910; *Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 674, 356 N.E.2d 565, 570.

In the present case, the jury was instructed, in essence, that these were alternative means of calculating damages. In fact, plaintiffs' counsel at argument explained that they were alternative means, and suggested that the jury select the diminution-in-value method of measuring damages because it was easier to calculate. At no time was the jury advised or instructed that it must *first* consider costs of re-

pair, and that it could go to diminution of value only if it found (1) the cost of correcting the defects was unreasonably disproportionate to the benefit of the purchaser, or (2) if correcting the defects would entail an unreasonable destruction of the builder's work. Thus, it is clear that the jury was misinstructed in this regard.

### B. *Calculating the Award of Damages: The Components of Damages in Relation to the Original Contract Price*

■ This brings us to Minor's second disagreement with the instructions the jury received. He maintains the jury should have been advised that plaintiffs are only entitled to damages for the cost of completion and for the cost of repair/diminution in value which cause them to pay money in excess of the contract price. Again, he is correct.

### (1) Relating the Cost-of-Completion Component to the Original Contract Price

In *Ross v. Danter Associates, Inc.* (1968), 102 Ill. App. 2d 354, 370, 242 N.E.2d 330, 338, the court, in a case where the contractor failed to complete a facility, stated that the proper measure of damages was the difference between the contract price the contractor agreed to and the fair market cost of completing the project. (See also *Herbert W. Jaeger & Associates v. Slovak American Charitable Association* (1987), 156 Ill. App. 3d 106, 112, 507 N.E.2d 863, 867; *Fisher v. Fidelity & Deposit Co.* (1984), 125 Ill. App. 3d 632, 641-42, 466 N.E.2d 332, 339-40; *Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 976, 326 N.E.2d 773, 780-81; *Bertram v. Bergquist* (1910), 153 Ill. App. 43, 45.) The *Ross* court stated:

> "The following example may serve to illustrate the application of the rule. Suppose a contractor has agreed to build a building for an owner for $400,000. Suppose further the contractor has partially constructed the building and has received $200,000 and at this point refuses or is unable to continue the contract and is hence in breach of contract. Suppose, also, that at this point the reasonable cost of completing the building would be $300,000. In determining the damages sustained by the owner, the cost of performance would be, first, the amount paid to the contractor, $200,000, plus the cost of completion, $300,000, or a total of $500,000. The difference between this amount, $500,000, and the contract price $400,000, or $100,000, would be the damages sustained by the owner." (*Ross*, 102 Ill. App. 2d at 370, 242 N.E.2d at 338.)

This is, of course, predicated on the well-accepted general rule that damages for breach of contract should place the party in the position he would have been had the contract been performed. See *Laff v. John O. Butler Co.* (1978), 64 Ill. App. 3d 603, 619-20, 381 N.E.2d 423, 435; *Kalal v. Goldblatt Brothers, Inc.* (1977), 53 Ill. App. 3d 109, 112, 368 N.E.2d 671, 673; Restatement (Second) of Contracts §347 (1981).

In the case at bar, the jury instructions regarding the cost of completion of the house do not include this limitation based upon the contract price. They simply state that plaintiffs are entitled to the costs of completion, which the instructions suggest are $15,080. This is obviously incorrect.

A review of the specifics in this case makes the error clearer. The contract price was $64,500 (for the sake of the discussion, all numbers have been rounded off). At the time of the breach, plaintiffs had paid $32,000. The $15,000 necessary to complete the house will clearly not put plaintiffs' expenditures—for completion of the house alone—above the contract price. Thus, by the result in this case, plaintiffs are placed in a better position than they would have been in if no breach had occurred, since they will have a completed house at a cost to them of only $32,000, rather than the $64,500 contract price. A logical corollary to the general rule is the principle that the compensation awarded for breach of contract should not provide plaintiffs a windfall recovery. (*Kalal*, 53 Ill. App. 3d at 112, 368 N.E.2d at 674.) Here, that is clearly the result.

### (2) Relating the Damages For Defects Component to the Original Contract Price

The next question is whether this contract price limitation applies also to the cost-of-repair/diminution-in-value damages. No court has directly answered this question. However, that is most likely due to the fact that in the normal case the cost-of-repair/diminution-in-value damages are always above and beyond the contract price. The reason they are not in the present case is because plaintiffs are getting the benefit of work from Minor for which they will not have to pay.

In answering the question, it is necessary to remember the general rule of damages, which is to place the party in the position he would have been in if the contract had been performed. Here, plaintiffs contracted to have this house completed in a workmanlike manner for $64,500. The damages for defects, *i.e.*, the cost-of-repair/diminution-in-value damages, are necessary due to the fact that the house was not built in a workmanlike manner, and to either allow the corrections to be made (cost of repairs) or to compensate plaintiffs if they cannot be

(diminution in value). Since these damages are necessary to place plaintiffs in the position they would have been in had the contract not been breached by the defective work, these damages must also be limited to the amount in excess of the contract price.

Thus, we find Minor's arguments, *i.e.*, that the instructions submitted were defective since they did not state that the cost-of-repair/diminution-in-value damages and the cost-of-completion damages are limited to those in excess of the contract price, are meritorious.

### III. CHALLENGE TO VERDICTS AS AGAINST MANIFEST WEIGHT OF THE EVIDENCE

Minor next argues the jury's verdicts were against the manifest weight of the evidence. He observes, correctly, that it is the duty of this court to review the evidence and to reverse the verdicts of juries whenever we find such verdicts are clearly against the manifest weight of the evidence. See *Fiore v. City of Highland Park* (1968), 93 Ill. App. 2d 24, 37, 235 N.E.2d 23, 30.

■ Minor insists the amount of damages set for the cost of completion and loss of use is not supported by the evidence. The jury set the cost-of-completion damages at $17,300, which the court lowered to $15,080. This is well within the limits of the evidence, since Short's estimate of completion and repair was $29,000. Similarly, the jury set the loss-of-use damages at $4,500. The evidence establishes the plaintiffs lost use of the house for 16 months and that, according to expert testimony, the rental value is $450 per month. Thus, again, the jury's verdict is within the parameters of the evidence. Accordingly, since we cannot conclude these verdicts are clearly against the manifest weight of the evidence, we will not disturb them.

■ Minor also contends the jury verdict finding against his counterclaim is against the manifest weight of the evidence. He simply asserts it is clear that the plaintiffs did not pay the third payment. He observes it is well settled that failure to make installment payments on a contract constitutes a breach of contract. (See *F.E. Holmes & Son Construction Co. v. Gualdoni Electric Service, Inc.* (1982), 105 Ill. App. 3d 1135, 435 N.E.2d 724.) Accordingly, he believes he should have prevailed.

It is also established, however, that the issue as to which party breached the contract is a question for the trier of fact, and its finding will not be disturbed unless it is against the manifest weight of the evidence. (*Gualdoni Electric*, 105 Ill. App. 3d at 1140, 435 N.E.2d at 727.) In the present case the contract provided that bills were due by the first of each month and that plaintiffs did not have to pay until the

10th of that month. Therefore, even though Minor submitted the bill early, payment was not due until January 10. The jury could have reasonably concluded that Minor walked off the job prior to that time and that Minor therefore breached the contract.

#### IV. PROPRIETY OF SUMMARY JUDGMENT ON THIRD-PARTY COMPLAINT: WAIVER BY ACCEPTANCE OF WORK AND PAYMENT THEREFOR WITHOUT RESERVATION

Minor next argues the court erred by granting Suttles' motion for summary judgment and entering judgment for Suttles on Minor's third-party complaint. In that complaint, Minor alleged that he retained Suttles to pour the concrete foundation and that any recovery plaintiffs would be entitled to would be due, in part, to the defective work of Suttles. Accordingly, Minor sought indemnification or contribution from Suttles for any recovery.

It was Suttles' position in his motion that Minor had accepted the work and waived any allegation concerning defective work because Minor paid him (Suttles) in full without complaint, even though Minor knew the walls were not plumb and were out of square. After a hearing, the court entered an order concluding that by paying Suttles and proceeding with construction on the foundation Minor had, in fact, waived any recovery. Accordingly, it entered judgment for Suttles.

It is well established that summary judgment should be granted only when the pleadings, depositions, and admissions, together with any affidavits, show there is no genuine issue as to a material fact and that the movant is entitled to judgment as a matter of law. (*Clifford-Jacobs Forging Co. v. Capital Engineering & Manufacturing Co.* (1982), 107 Ill. App. 3d 29, 33, 437 N.E.2d 22, 25.) The reviewing court will reverse the order granting summary judgment if it determines that a genuine issue of a material fact does exist. *Casteel v. Smith* (1982), 109 Ill. App. 3d 1094, 1099, 441 N.E.2d 860, 863.

In the present case, Suttles relied on a portion of Minor's deposition and upon his own affidavit. In his affidavit, Suttles averred that he completed his work on October 22, 1988; submitted his bill on November 2, 1988; and was paid in full on November 12, 1988. In his deposition, Minor acknowledged that (1) he discovered the foundation problems within two or three days of its being poured; (2) it is common for walls to be slightly out of plumb and square; (3) he spoke with plaintiffs about the problem, discussed tearing the foundation out and having it repoured, but they decided to build on top the foundation; and (4) he accepted Suttles' work and paid for it without decreasing the amount for poor workmanship. In his affidavit, Minor stated that

the sole reason he paid Suttles was that Suttles' work had been accepted by the plaintiffs and they had paid him.

Waiver is either an express or implied voluntary and intentional relinquishment of a known and existing right. (*Wald v. Chicago Shippers Association* (1988), 175 Ill. App. 3d 607, 621, 529 N.E.2d 1138, 1147; *Whalen v. K mart Corp.* (1988), 166 Ill. App. 3d 339, 343, 519 N.E.2d 991, 994.) An implied waiver of a legal right may arise when conduct of the person against whom waiver is asserted is inconsistent with an intent to enforce that right. (*Wald,* 175 Ill. App. 3d at 621, 529 N.E.2d at 1147; *Whalen,* 166 Ill. App. 3d at 343, 519 N.E.2d at 994.) A party to a contract may not lull another into false assurance that strict compliance with a contract duty will not be required and then sue for noncompliance. (*Whalen,* 166 Ill. App. 3d at 343, 519 N.E.2d at 994.) The analysis properly focuses on the intent of the nonbreaching party and, if he has intentionally relinquished a known right, either expressly or by conduct inconsistent with an intent to enforce that right, he has waived it and may not thereafter seek judicial enforcement. (*Whalen,* 166 Ill. App. 3d at 343, 519 N.E.2d at 994.) Where there is no dispute as to the material facts and only one reasonable inference can be drawn from them, the question of waiver is a matter of law. *Wald,* 175 Ill. App. 3d at 621, 529 N.E.2d at 1147-48.

■ We conclude that the trial court was correct in concluding that Minor, by his payment to Suttles, waived any complaint he had. The summary-judgment evidence established that Minor knew of the defects within several days of the walls being poured. He met with plaintiffs and discussed having the walls torn down and repoured. However, they decided to build on them as they were. Minor then paid Suttles' bill without complaint. Minor never held money back, had Suttles come to the site, or notified Suttles that this payment was not releasing him from responsibility for these defects. Thus, the evidence establishes that Minor knew of the alleged breach, decided not to take action, continued construction, and paid the bill. This supports the court's decision.

## V. SUMMARY

Accordingly, we conclude that the court properly granted Suttles' motion for summary judgment, and that the jury's verdicts are not against the manifest weight of the evidence.

■ We also conclude, as discussed, that the jury instructions were deficient. However, having concluded the jury was misinstructed regarding the relationship between cost-of-repair and diminution-in-value damages does not necessitate, in this case, reversal and remandment.

As noted, the exceptions to the cost-of-repair damages are if "the defects could be corrected only at a cost unreasonably disproportionate to the benefit to the purchaser, or if correcting them would entail unreasonable destruction of the builder's work." (*Park*, 89 Ill. 2d at 464, 433 N.E.2d at 657.) Here, the testimony of various witnesses clearly established that the foundation is not plumb or square. Short testified this defect could only be corrected by removing the foundation and pouring a new one. While Minor's witnesses testified they could correct several defects, it is clear they cannot correct the foundation problem without doing as Short suggests. Accordingly, we conclude the evidence established that an exception to the general rule should apply, and the proper measure of damages in this regard is the diminution-in-value measure. Since this was the amount awarded, we need not remand, even though the jury was misinformed as to how to reach this conclusion.

■ This leaves us with the question of what redress is needed due to the instruction's failure to limit the recovery for cost of completion and diminution in value by the contract price. As explained earlier, the proper calculation would be the damages for breach (the amount plaintiffs paid Minor, plus the cost of completion), plus the damages for defects (here, the diminution in value). Plaintiffs are then entitled to only that amount of this total which is above the contract price. They are also entitled to the loss-of-use damages. In this case, the calculations show:

| | |
|---|---|
| Cost of completion | $15,080 |
| Amount plaintiffs paid | 32,114.86 |
| Diminution of value | 20,000 |
| | $67,194.86 |
| Minus contract price | -64,531 |
| Amount above contract price | $ 2,663.86 |
| Plus loss of use | +4,500 |
| Amount of damages | $ 7,163.86 |

Thus, plaintiffs are properly entitled to damages of $7,163.86. Accordingly, we vacate the judgment of $39,580 entered in favor of plaintiffs against Minor, and remand with directions that the trial court enter a judgment in plaintiffs' favor of $7,163.86.

Affirmed in part; vacated in part and remanded with directions.

SPITZ and McCULLOUGH, JJ., concur.