**IFC CREDIT CORPORATION, Plaintiff,**

v.

**NUOVO PASTA CO., INC., Defendant.**

No. 91 C 7978.

United States District Court, N.D. Illinois, E.D.

March 10, 1993.

Edward Michael Graham, Aaron E. Hoffman, Schwartz & Freeman, Marty Jay Schwartz, Marty J. Schwartz, Gregory Alan Stayart, Chicago, IL, for plaintiff.

Edward C. Fitzpatrick, Pamela Sue Moore–Gibbs, Lord, Bissell & Brook, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This contract dispute arises out of an equipment leasing agreement between plaintiff IFC Credit Corporation ("IFC") and defendant Nuovo Pasta Co., Inc. ("Nuovo Pasta"). The agreement, which provided that IFC would lease pasta-making equipment to Nuovo Pasta, was contingent on Nuovo Pasta obtaining $300,000 of additional financing. IFC now seeks partial summary judgment on the issue of whether Nuovo Pasta waived this financing contingency. For the reasons set forth below, we grant IFC's motion.

### I. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Moreover, we must view the record and all possible inferences in the light most favorable to the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Summary judgment should be denied "where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### II. Factual Background

In 1991, Nuovo Pasta was a new company and Kenneth Finochiaro ("Finochiaro") served as its president. In order to acquire pasta making equipment, Finochiaro negotiated an equipment leasing arrangement with IFC. On September 26, 1991, the two companies signed a Confidential Lease Agreement ("Agreement"), which provided that IFC, or its assigns, would lease equipment to Nuovo Pasta for $1,200,000. Under the Agreement, Nuovo Pasta agreed to pay IFC

a $40,145 commitment fee. In a letter dated October 3, 1991, the parties further agreed that IFC would return the fee, minus $500 for expenses, if Nuovo Pasta was unable to come up with $300,000 of additional financing by November 15. Both parties understood the additional financing to be a condition precedent to closing the Agreement.

Throughout the negotiations, IFC dealt with Finochiaro. However, on October 30, Nuovo Pasta's Board of Directors signed and sent a letter to IFC stating that "[e]fforts to raise additional equity capital are under way and we anticipate completing the final terms in the next several days," adding that if they were unable to raise the funds, they would appreciate it if IFC would send the refunded fee to the company from whom they borrowed the fee money. The letter contained a "cc" to Finochiaro.

Two days later, on November 1, Finochiaro sent IFC a letter indicating that

> Nuovo Pasta Co., Inc. has received the following financial commitments in excess of $300,000. According to our agreements we ask you to conclude our lease in the amount of $1,200,000.

Finochiaro signed the letter, remarking that he "look[ed] forward to signing the final documents later this month."

Attached to the letter were five documents representing commitment letters from potential investors. However, all of the letters contained conditions making the loans or investments tentative. Some loans were predicated upon the shipment of the pasta equipment and the initiation of renovation at the factory site, others depended upon events entirely out of the control of Nuovo Pasta.

On November 15, Nuovo Pasta's vice president, George Lauritsen, sent a letter to IFC informing the leasing company that Nuovo Pasta had failed to obtain the necessary $300,000 financing and requesting that IFC return $39,645 (the commitment fee, minus $500) to Nuovo Pasta's lender. IFC did not return the fee, but sued Nuovo Pasta on the contract. Nuovo Pasta has counterclaimed for the $39,645.

## III. Discussion

The parties agree that Nuovo Pasta's receipt of $300,000 of additional financing was a condition precedent to closing the leasing agreement and making the commitment fee non-refundable. Accordingly, IFC's right to the commitment fee turns upon whether Finochiaro's November 1 letter constitutes a waiver of the financing contingency, and, relatedly, whether Finochiaro had actual or apparent authority to make such a waiver.

IFC argues that on November 1, Nuovo Pasta, through Finochiaro, informed IFC that it had received the requisite financing and wished to close the leasing agreement. By doing so, IFC contends, Nuovo Pasta waived the condition precedent to finalizing the lease and making the commitment fee non-refundable.

Nuovo Pasta responds that no waiver occurred for two simple reasons. First, given the context of prior communications between the parties and the tenuous nature of the attached commitment letters, the November 1 letter did not amount to a waiver. Second, Finochiaro did not have either actual or apparent authority to bind Nuovo Pasta and, in light of the October 30 letter from the board, IFC was not justified in relying on the November 1 letter.

■ We must first determine whether, as a matter of law, the November 1 letter constituted a waiver of the financing contingency. Under Illinois law, "w[ ]here there is no dispute as to the material facts and only one reasonable inference can be drawn from them, the question of waiver is a matter of law." *Wells v. Minor*, 219 Ill.App.3d 32, 161 Ill.Dec. 691, 700, 578 N.E.2d 1337, 1346 (Fourth Dist.1991). *See also Bennett & Kahnweiler Assoc. v. Ratner*, 133 Ill.App.3d 316, 88 Ill.Dec. 530, 534, 478 N.E.2d 1138, 1142 (First Dist.1985) (where there is no material dispute of fact, "[d]etermination of the waiver of a contract provision is an issue of law properly within the trial court's summary power."). The unequivocal facts in this case allow only one reasonable inference—that Finochiaro's November 1 letter amounted to a waiver of the financing contingency.

There is no dispute about the events in this case. Nuovo Pasta's board advised IFC that within several days they hoped to complete their search for financing. Two days later, the president of the company, with whom IFC had been dealing, informed the leasing company that Nuovo Pasta had received commitments in excess of the required $300,000, and "according to [their] agreement," asked IFC "to conclude [their] lease." There is nothing in the November 1 letter that suggests there was anything further that Nuovo Pasta needed to, or was going to, do to finalize the Agreement. To the contrary, the letter advised IFC that the financing condition had been met, and invited the leasing company to move forward.

Nor are we persuaded by Nuovo Pasta's contention that the commitment letters attached to the November 1 missive were sufficiently tentative that neither Nuovo Pasta nor IFC could have intended or interpreted the letter as a waiver of the financing contingency. There is no evidence suggesting that IFC had an independent duty to assess the strength of the commitments on which Nuovo Pasta relied before proceeding on the Agreement, nor does Nuovo Pasta make such a claim. Without evidence, we cannot infer such a duty. The only reasonable interpretation, then, is that Finochiaro's letter constituted a waiver.

■■■ Next, we must determine if there is a material issue of fact as to whether Finochiaro had actual or apparent authority to bind Nuovo Pasta, and/or whether IFC justifiably relied on the November 1 letter. Again, the material facts are undisputed. IFC negotiated directly and exclusively with Finochiaro. Finochiaro, as president of Nuovo Pasta, had presumptive authority to act on behalf of the corporation. *See Golen v. Chamberlain Mfg. Corp.*, 139 Ill.App.3d 53, 93 Ill.Dec. 677, 487 N.E.2d 121 (First Dist. 1985). *See also Lundberg v. Church Farm, Inc.*, 151 Ill.App.3d 452, 104 Ill.Dec. 309, 502 N.E.2d 806 (Second Dist.1986) (where corporation put manager in position to control

corporation and its dealings with the public, manager had apparent authority to act on behalf of the corporation for related matters). In the face of such authority, Nuovo Pasta argues simply that the October 30 letter was unusual and, given that it came directly from the Board, put IFC on notice that Finochiaro lacked authority to act on his own to bind the corporation. Although a third party may not rely on an agent's authority when it has reason to know that the agent does not have authority to bind the corporation, that is not the case here. *See Evanston Bank v. Conticommodity Svcs., Inc.*, 623 F.Supp. 1014, 1032 (D.C.Ill.1985).

Finochiaro's relationship with Nuovo Pasta and with IFC was clear. He, exclusively, had represented Nuovo Pasta with IFC, had negotiated with IFC, and had signed all agreements between the two companies. It is undisputed that Nuovo Pasta never apprised IFC that Finochiaro lacked authority to act on behalf of the corporation. In fact, there is no evidence in the record, nor does Nuovo Pasta argue, that Finochiaro lacked actual authority to bind the leasing company.[1] That alone warrants a finding of summary judgment for IFC.

Even if Finochiaro did not have actual, but had only apparent, authority, there is nothing in the record to support Nuovo Pasta's contention that IFC was not justified in relying on the president's November 1 letter. By Nuovo Pasta's own admission, the only thing that might have put IFC on notice of Finochiaro's lack of authority was the October 30 letter from the Board. That letter, however, did nothing to undermine Finochiaro's authority. In fact, in several ways, the letter bolstered Finochiaro's authority. The letter explicitly confirms the terms of the agreement negotiated by Finochiaro. Moreover, the letter states that "[e]fforts to raise additional equity capital are under way and we anticipate completing the final terms in the next several days." Two days later, and right on schedule, IFC received a letter from Finochiaro regarding the financing.

---

1. At most, Nuovo Pasta mentions, without offering any evidence, that Finochiaro tried to oust the Board. However, the company, critically, fails to set forth evidence, or even to argue, that this tension led to any limits on Finochiaro's actual authority to act on behalf of the corporation.

In sum, Nuovo Pasta has offered no evidence that Finochiaro lacked actual authority to bind the corporation in the November 1 letter. Nor has Nuovo Pasta advanced any evidence, other than the October 30 letter, to support its contention that IFC should have been aware that Finochiaro lacked authority to bind Nuovo Pasta. Our own perusal of the record turns up nothing from which a reasonable juror could infer a lack of actual or apparent authority. Accordingly, we grant IFC's motion for partial summary judgment.

### IV. Conclusion

For the foregoing reasons, we grant plaintiff's motion for partial summary judgment on Nuovo Pasta's waiver of the financing contingency. It is so ordered.