WEISS MEDICAL COMPLEX, LTD., Plaintiff-Appellant, *v.* SUN C. KIM, M. D., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 79-2475

Opinion filed June 25, 1980.—Rehearing denied August 13, 1980.

Sperling, Slater & Spitz, of Chicago (Stephen J. Spitz, of counsel), for appellant.

Blumenthal & Stavins, of Chicago (Milton M. Blumenthal and Richard Lee Stavins, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:
Plaintiff, Weiss Medical Complex, Ltd., brought this action to enforce

a restrictive covenant provision contained in the employment contracts of defendants, Drs. Sun C. Kim and Chusak Ladpli. Following a hearing, the trial court found that the restrictive covenant in Kim's contract was cancelled by virtue of both an oral agreement with a representative of plaintiff and an action of plaintiff's board of directors. The court further concluded that the restrictive covenant in Ladpli's contract was not eliminated by oral agreement but was cancelled by the aforementioned corporate action. Accordingly, the trial court entered an order denying plaintiff's motion for a preliminary injunction. Plaintiff's interlocutory appeal challenges the finding that the board of directors' action removed the restrictive covenants. Plaintiff does not, however, contest the court's ruling that an oral agreement rescinded Kim's restrictive covenant. Since Kim admittedly is not bound by the restrictive covenant at issue, the trial court correctly denied plaintiff's request for a preliminary injunction as to him.

Plaintiff, an Illinois corporation, is a medical clinic located in Harvey, Illinois. Defendants are physicians licensed to practice medicine in Illinois. On October 10, 1972, and April 11, 1973, Kim and Ladpli, respectively, entered into employment agreements with plaintiff. Each contract contained the following pertinent provisions:

"You agree to be employed by [plaintiff] for a period of one year * * *. After the one-year period, your employment and this understanding will be automatically renewed upon the same understanding as contained in this letter unless either [plaintiff] or you give notice in writing to the other not less than 90 days prior to the end of the year.

* * *

You recognize that the services which you will render to [plaintiff] are of unique and extraordinary character and you agree not to perform medical services individually or in connection with any other person, firm, association or corporation within a ten mile radius of the business location of [plaintiff], both during your employment and for one year after the expiration of your employment and for the same period you agree not to solicit, correspond or contact any patient except for the benefit of [plaintiff]. In the event it is necessary to continue treating any patients after termination of your employment, the value of your services performed after termination will be fairly determined by [plaintiff]. * * * Since we are sure you recognize your uniqueness to [plaintiff], if this paragraph is violated, [plaintiff] at its option shall be entitled, in addition to any other rights, to enjoin you."

Defendants resigned from the clinic on May 31, 1979, but remained affiliated with plaintiff on a part-time basis until September 24, 1979.

During June through September 1979, defendants also performed medical services in their own offices in Park Forest, Illinois.

On October 29, 1979, plaintiff filed a verified complaint for injunctive and other relief alleging that defendants breached their post-employment restrictive covenant by treating plaintiff's patients without plaintiff's knowledge or consent and by rendering treatment within a 10-mile radius of the facility after leaving the clinic. Defendants filed a verified answer and motion to strike asserting, in pertinent part, that the employment agreements containing the restrictive covenant were cancelled by corporate action of plaintiff's board of directors on February 3, 1977.

On November 16, 1979, a hearing commenced on plaintiff's motion for preliminary injunction and the following relevant evidence was adduced: Beginning in 1972, newly hired physicians entered into written employment contracts with plaintiff which contained the foregoing restrictive covenant and provided for a fixed salary. Because this salary arrangement was not successful financially, plaintiff adopted an "incentive pay plan," effective November 1, 1976, under which physicians were paid on a commission basis with a minimum salary "draw." In February 1977, plaintiff's bylaws provided that the number of directors on the board should be an odd number not less than the number of shareholders. There were 12 shareholders at the time, of whom seven were elected directors.

All seven directors were present at the meeting of the board of directors on February 3, 1977. Four of these directors, including Ladpli, had written employment contracts containing the restrictive covenant at issue. Thomas Maloney, business administrator of the clinic, also attended the meeting. The corporate minutes of the meeting read in relevant part:

> "After some discussion, to make it easier for physicians being 'eased out' of the clinic under the incentive system to leave and to make it easier for future physician recruitment, it was unanimously decided that the 'restrictive covenant' on all existing contracts be removed. Mr. Maloney also stated that new employment agreements are being worked on by Jerry Biederman [plaintiff's corporate counsel]."

Witnesses offered different accounts of who initiated the discussion about the restrictive covenants as well as the reasons underlying the board's decision. Dr. Oleg Prozorovsky, then chairman of the board, testified that there was discussion concerning the fact that some doctors were drawing relatively high salaries unjustified by their production. There was also discussion that removal of the restrictive covenants would make it easier for doctors who were not producing sufficiently to leave the clinic and would facilitate the hiring of new physicians. He did not recall who introduced the topic of restrictive covenants. Dr. Constante F.

Vallejos, another director, testified that Maloney indicated some doctors were dissatisfied with the incentive program and might sue plaintiff for their salaries. Vallejos also related that something was mentioned about easing out nonproductive doctors by removing restrictive covenants. Vallejos and Prozorovsky, neither of whom had restrictive covenants, testified that deletion of the covenants was in plaintiff's best interest. Ladpli testified that Maloney initiated the discussion concerning the restrictive covenants. Ladpli had no knowledge, however, of any particular doctor being eased out. Maloney, who prepared the minutes, did not remember who presented the subject of restrictive covenants, and did not recall any discussion about plaintiff's intent to eliminate any doctors.

After reviewing the minutes, Mr. Biederman sent a memorandum to Dr. Robert Gloss, president of the clinic, expressing reservations about the vote to terminate restrictive covenants. Biederman explained that the resolution might be void or voidable, and that the directors, being on both sides of the contractual arrangement, may have breached their fiduciary duties. Gloss wrote back to Biederman stating that the board of directors had passed a "preliminary resolution removing the 'restrictive covenant' on all existing contracts." Biederman informed Gloss that the proper way to remove the restrictive covenant and to protect the directors was to obtain shareholder approval. Biederman advised Gloss to meet with Dr. Frederick Weiss, the majority shareholder, to find out if he were amenable to deleting the restrictive covenant from the employment contracts.

On June 6, 1977, a shareholders' meeting was held at which Weiss, among others, was present. The minutes provide, in relevant part, as follows:

> "It was requested by Dr. Gloss that the shareholders ratify the actions of the Board of Directors that have taken place since the January meeting. A lengthy discussion followed regarding the new employment agreements which have been drawn up excluding the 'restrictive covenant'."

Weiss testified that the deletion of the restrictive covenant was sought to be ratified. He and other shareholders objected to its removal. Weiss further stated that no ratification of the board's February 3, 1977, resolution was achieved after the discussion.

Ladpli testified that ratification of the board's acts was not obtained at the shareholders' meeting, and that he never signed any employment contract excluding the restrictive covenant. Ladpli also testified that in late 1976, prior to the resolution in issue, he had discussions with Kim about leaving the clinic.

At the conclusion of the hearing, the trial court found that the written employment contracts between plaintiff and defendants were not contrary to public policy; that Kim, but not Ladpli, had an oral agreement with plaintiff, through Weiss, deleting the restrictive covenant; and that the restrictive covenants in the employment contracts of both defendants were cancelled by virtue of the February 3, 1977, action of plaintiff's board of directors. The court concluded that the board's action did not constitute self-dealing and was done in fairness and in the best interest of the corporation. The court found that the action was introduced by Maloney, and was instituted primarily for the benefit of Weiss and then for the doctors involved. The court dissolved a temporary restraining order which had been entered and denied plaintiff's request for a preliminary injunction.

On appeal plaintiff challenges the trial court's ruling that the February 3, 1977, resolution of plaintiff's board was binding on the corporation and cancelled Ladpli's restrictive covenant. Specifically, plaintiff urges that it was legal error to allow four personally interested directors having restrictive covenants in their employment contracts to be counted toward the quorum and majority vote of plaintiff's board of directors.

A quorum is composed of a majority of the number of directors fixed by the corporation's bylaws. The act of a majority of the directors at a meeting at which a quorum is present is the act of the board of directors. (Ill. Rev. Stat. 1977, ch. 32, par. 157.37.) At the time of the resolution in issue, plaintiff's bylaws provided for 13 directors; thus seven directors constituted a quorum.

Duties imposed upon a director of the corporation as a fiduciary require him to manage the corporation with undivided and unqualified loyalty, and prohibit him from profiting personally at corporate expense or permitting his private interests to clash with those of his corporation. (See *Patient Care Services, S. C. v. Segal* (1975), 32 Ill. App. 3d 1021, 337 N.E.2d 471.) In Illinois, a director who has a personal interest in a subject under consideration is disqualified to vote on the matter and may not be counted for the purpose of making a quorum. (*Karris v. Water Tower Trust & Savings Bank* (1979), 72 Ill. App. 3d 339, 389 N.E.2d 1359; *Elward v. Peabody Coal Co.* (1956), 9 Ill. App. 2d 234, 132 N.E.2d 549; *Federal Life Insurance Co. v. Griffin* (1912), 173 Ill. App. 5.) The only exception is that a director, irrespective of any personal interest, *may* vote *to* establish reasonable compensation to all directors for service to the corporation. (Ill. Rev. Stat. 1977, ch. 32, par. 157.33.) Whether a director is personally interested in a matter is a question of fact. (*Karris v. Water Tower Trust & Savings Bank.*) Where there is no quorum because of the disqualification

of directors, a contract executed pursuant to a resolution of the board is voidable and may be rendered valid by shareholder ratification. *Federal Life Insurance Co. v. Griffin.*

Four of the seven directors who voted affirmatively to delete the restrictive covenant from all existing contracts had a restrictive covenant in their own employment contracts with plaintiff. The trial court did not make a determination whether these four directors had a personal interest in the matter under consideration by the board, although it did note that they benefited from the action.

We believe that the evidence conclusively demonstrated that these four directors had a personal interest in the matter under consideration by the board. They were among the intended beneficiaries of the board's resolution. Removal of the restrictive covenant would enable a director to leave the clinic and yet continue to render services to patients previously treated at the clinic. This access to plaintiff's patients would provide clientele and a source of income to physicians leaving the clinic. Consequently, a director who was restrained from such ongoing patient contact by the restrictive covenant in issue stood to benefit from a favorable outcome on the vote to delete the provision from all existing contracts. Contrary to Ladpli's suggestion, it is immaterial that defendants remained with the clinic for over two years after the board's action. Had the resolution been valid, the benefit would still have accrued to defendants upon their departure from the clinic. We conclude, therefore, that the directors with restrictive covenants in their contracts were clearly disqualified to vote this benefit of removal to themselves.

In view of the personal interest of four board members, when the matter of restrictive covenants was considered, there were only three directors whose lack of personal interest entitled them to be counted towards a quorum. Consequently, no affirmative action on restrictive covenants was taken by a qualified majority of the board of directors.

Under such circumstances, the board's action was voidable. Although the action could have been ratified by the shareholders, the shareholders expressed objections at a meeting on June 6, 1977, and ratification was not achieved.

Ladpli asserts that because the action was voidable, plaintiff had to repudiate affirmatively the board's vote and urges further that a refusal to ratify does not constitute sufficient repudiation. In support of this contention, he cites *Freeport Journal-Standard Publishing Co. v. Fredric W. Ziv Co.* (1952), 345 Ill. App. 337, 103 N.E.2d 153. That case is clearly distinguishable from the present matter. There the court reasoned that where a corporate agent enters into an unauthorized agreement with a third party, the corporation has a duty to repudiate the transaction

promptly, and that silence under such circumstances is evidence from which ratification could be found. The case did not address the issue of shareholder ratification of an action taken by a board in the absence of a quorum. Moreover, here no third-party contract existed, and, instead of remaining silent, the shareholders objected to removal of the restrictive covenant. The shareholders here refused to ratify the board's decision; no further affirmative acts of repudiation or disavowal of the vote was required.

Relying on *Shlensky v. South Parkway Building Corp.* (1960), 19 Ill. 2d 268, 166 N.E.2d 793, Ladpli maintains that the vote of a personally interested director may be counted towards establishing a quorum and majority if made in fairness to the corporation. In *Shlensky*, the court addressed the fiduciary duty of corporate directors in transactions between corporations with interlocking directorates. Our supreme court held that transactions between corporations with common directors may be avoided only if unfair, and that the directors who would sustain the challenged transaction have the burden of overcoming the presumption against its validity by demonstrating its fairness.

In reaching its decision in the present case, the trial court apparently applied the fairness test advanced in *Shlensky* and concluded that the board's action was done in fairness to the corporation. The *Shlensky* decision, however, is inapposite. There, the court was primarily concerned with transactions between corporations where the directors had potentially conflicting or adverse obligations to more than one corporation. When speaking of a "disinterested" board, the court was referring to one in which the members had loyalty to only one corporation. The case did not consider whether a director with a personal interest in a matter under consideration by a corporation could be counted towards a quorum or could vote on the matter. *Shlensky* thus did not alter the law governing quorum requirements and the disqualification of directors having a personal interest.

In view of the personal interest of four directors, there was no quorum present at the board meeting on February 3, 1977. And since shareholder ratification was refused, the resolution to remove restrictive covenants from all existing employment contracts was not binding on the corporation. Consequently, the trial court erred in finding that the board's action cancelled the restrictive covenant in Ladpli's employment contract. Having so concluded, it is unnecessary to consider the additional arguments offered by plaintiff.

For the reasons stated, the order of the circuit court of Cook County denying plaintiff's motion for a preliminary injunction against Dr. Sun C. Kim is affirmed; the order denying plaintiff's motion for a preliminary

injunction against Dr. Chusak Ladpli is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed and remanded in part.

SIMON and RIZZI, JJ., concur.