FOURTH DIVISION
August 7, 2008

No. 1-07-2615

| | | |
|---|---|---|
| SUSAN B. KERN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 05 CH 18394 |
| | ) | |
| ARLINGTON RIDGE PATHOLOGY, S.C., and | ) | |
| RICHARD REGAN, | ) | Honorable James F. Henry, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE MURPHY delivered the opinion of the court:

Plaintiff, Susan B. Kern, M.D., brought an action on October 27, 2005, seeking an injunction against the action of defendant, Richard Regan, M.D. (Regan), and Arlington Ridge Pathology, S.C. (Arlington). The Arlington board of directors with Regan as president of the board amended Arlington's articles of incorporation (articles) on October 21, 2005, to be effective on October 26, 2005. The amendment modified the percentage of shareholder votes required to amend or alter Arlington's corporate bylaws. On October 26, 2005, Regan issued notice of a special meeting and proposed changes to the bylaws. Plaintiff later amended her complaint for injunctive relief by adding counts for breach of fiduciary duty and conspiracy. On January 18, 2007, the trial court granted defendants' motion for summary judgment, finding that the board legally amended the articles.

1-07-2615

On appeal, plaintiff asserts several grounds in support of her argument for reversal. Plaintiff argues that the trial court erred in its interpretations of the bylaws and the Business Corporation Act of 1983 (Act) (805 ILCS 5/1 *et seq.* (West 2004)) in finding a proper quorum existed to allow amendment of the articles. Plaintiff contends that, as a beneficiary of the amendment, Regan had the burden, but failed, to show the transaction was fair and in good faith. Plaintiff also asserts that questions of material fact remain on all counts because various issues were not sufficiently addressed in affidavits and other evidentiary submissions. For the following reasons, we affirm the holding of the trial court.

## I. BACKGROUND

On March 1, 1994, Arlington was incorporated under the laws of the State of Illinois for the purpose of the study, diagnosis and treatment of human ailments and injuries. Plaintiff and Kishen Manglani, M.D. (Manglani), were among the original six pathologists that were shareholders in Arlington. Arlington maintained an exclusive services agreement with Northwest Community Hospital (Northwest) in Arlington Heights, Illinois. Arlington's offices are located in the Northwest facilities and plaintiff performed her duties at this location.

On January 11, 2000, plaintiff was elected vice president and secretary of the board. In 2002, Regan was admitted as a shareholder. Regan later became president for the relevant transactions of October 2005. In 2005, only plaintiff, Regan, and Manglani remained as shareholders of Arlington, holding 166, 170, and 166 shares, respectively. Plaintiff, Regan, and Manglani were also the only directors during the relevant times.

The articles do not contain provisions regarding the configuration of the board or quorum requirements for the board to transact business. Section 3.2 of the bylaws, the variable range

requirement, provides that the board shall consist of between four and nine directors, each of whom is required to be a licensed physician and shareholder employee of Arlington. Section 3.9 of the bylaws sets a quorum for the transaction of business as a majority of the directors, except where provided otherwise.

The articles are also silent on the requirements for board actions and the bylaws again provide guidance. Under section 3.3(b) of the bylaws, with notice that a meeting will be held to vote on the removal of a director, the board may remove a director with the vote of 80% of outstanding shares. Section 9.3 of the bylaws requires a vote of persons holding at least 67% of outstanding shares for any of several listed "Major Decisions" to be valid. Included among the major decisions are amending or modifying the bylaws and several decisions with financial implications. However, Article XIV of the bylaws provides, "[e]xcept to the extent otherwise provided in the Articles of Incorporation, these bylaws shall be subject to alteration, amendment or repeal, and new bylaws may be adopted only by the affirmative vote of persons holding eighty percent (80%) of outstanding shares of the Corporation."

Despite the variable range requirement, outside of a period of time in 2002, Arlington has operated with a three-person board since 1999. Plaintiff stated in her supporting affidavits that during this period, there were no regular or annual board meetings, the bylaws were never amended by the board, and only two special meetings of the board were called in 2000. Furthermore, all actions of the board were by unanimous vote of the three board members. These actions included the election of plaintiff as vice president and secretary, setting the value of a retirement gift for a shareholder physician, and actions regarding Arlington's pension and profit-sharing plans.

Also during this time, plaintiff alleges that a dispute arose between her and Bruce

Crowther, chief executive officer of Northwest. Plaintiff was elected president of the Northwest medical staff in 2001. Plaintiff alleged that her relationship with Crowther was always strained and that it grew contentious in a dispute regarding Northwest's use of hospitalist physicians. Plaintiff alleges that she subsequently was the victim of verbal abuse by Crowther. In response, plaintiff filed an incident report with Northwest's board of directors on September 12, 2001.

Plaintiff alleges that since that time, Crowther harbored ill-will and animus against her and sought revenge. Although not of record, and allegedly was never made available to plaintiff, an Arlington employee who had been disciplined by Arlington for conduct detrimental to the corporation filed an occurrence report with Northwest in or around June 2005. The report included accusations that plaintiff acted inappropriately and unprofessionally in expressing Arlington's dissatisfaction with the employee. In response, plaintiff alleges that Northwest conducted a "circus investigation." In August 2005, Crowther met with Regan, who asserted the issue was an internal matter for Arlington to handle.

In order to avoid the due process and procedural rights afforded plaintiff under Northwest's grievance procedure, plaintiff claims that Northwest decided to exercise its rights under its agreement with Arlington. Crowther issued a letter to Regan on August 24, 2005, outlining the occurrence report and investigation of plaintiff. Crowther indicated that plaintiff exhibited threatening and abusive behavior and created a hostile work environment. Accordingly, pursuant to the agreement between the parties, Crowther threatened to terminate Arlington's exclusive services agreement if plaintiff was not sent to professional counseling or if her employment with Arlington was not terminated.

Plaintiff alleges that she was informed that Crowther and Regan discussed the necessity of manipulating Arlington's articles and bylaws to allow for plaintiff's termination. On October 17,

2005, Regan issued notice of a special board meeting on October 21, 2005, at 1:30 p.m., that did not include an agenda or stated purpose. On October 21, 2005, Regan and Manglani met prior to the scheduled time with Arlington's counsel and voted to adopt a resolution to amend the articles.

Plaintiff arrived at the scheduled time and connected her counsel via speaker phone, as agreed by the parties. Plaintiff was given the minutes of the earlier meeting, including a proposed amendment to the articles that would permit alteration, amendment or repeal of the bylaws with a two-thirds vote of holders of outstanding shares. Plaintiff was also presented with a copy of a five-day notice of shareholder consent to the proposed amendment pursuant to section 7.10 of the Act. 805 ILCS 5/7.10 (West 2004). Plaintiff and her counsel objected that no meeting or debate had occurred as scheduled. Arlington's counsel stated that the meeting had already occurred and the directors knew plaintiff's position. Therefore, she was not needed for such an action.

The five-day notice included a notice for a shareholder's written consent, in lieu of a special meeting, to approve the resolution. Regan and Manglani signed the written consent to the amendment of the articles to allow amendment of the bylaws by a two-thirds vote of outstanding shareholders. On October 26, 2005, plaintiff received notice that the amendment to the articles had been approved and another five-day notice seeking shareholder approval of several amendments to the bylaws. The proposed amendments included a change in the voting requirements to two-thirds of outstanding shares for the bylaws with respect to removal of a director, termination of corporate and physician employment, limitations on board actions for major decisions, and the alteration, amendment or repeal of the bylaws. Plaintiff promptly filed this action on October 27, 2005, to enjoin the board action of October 21, 2005. As noted above, plaintiff later amended her complaint to add counts for damages for conspiracy and breach of fiduciary duty for defendants' allegedly improper attempts to terminate her.

The trial court granted defendants' joint motion for summary judgment and denied plaintiff's motion to reconsider. The trial court also ordered mediation following argument on each motion, which was unsuccessful. The trial court found that, by the years of operation with three shareholders, Arlington adopted a method of operation that abrogated the bylaws and a quorum was present on October 21, 2005. Accordingly, the trial court held that the amendment of the articles was proper. Plaintiff now appeals the trial court's grant of summary judgment.

## II. ANALYSIS

Summary judgment may be granted when "the pleadings, depositions, and admissions on file, [and] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2004). The sole function of the trial court is to determine if material issues of fact exist; it is not to try the issues. *Kim v. Citigroup, Inc.*, 368 Ill. App. 3d 298, 305 (2006). On appeal, an order granting summary judgment is reviewed *de novo*. *Babich v. River Oaks Toyota*, 377 Ill. App. 3d 425, 427 (2007). While the evidence must be reviewed in a light most favorable to the nonmovant, evidence unfavorable to the nonmovant cannot be ignored and an order of the trial court may be affirmed on any basis called for in the record. *Adames v. Sheahan*, 378 Ill. App. 3d 502, 512 (2007). Plaintiff advances several arguments in claiming the summary judgment order was improper and each is considered in turn.

### A. Quorum for Vote on Resolution to Amend Articles

Plaintiff's first argument is the crux of this case. Plaintiff contends that the trial court erred in finding that a quorum existed for the October 21, 2005, meeting and that the minimum voting requirements were not met for proper action. Plaintiff argues that this decision was

contrary to established case law, the Act and the bylaws. Therefore, plaintiff concludes that the amendment to the articles was invalid.

Plaintiff begins by noting that it has long been held that corporate bylaws constitute an enforceable contract between the corporation and its shareholders. *Cratty v. Peoria Law Library Ass'n*, 219 Ill. 516, 523 (1906). Under this rule, the plain language of a corporation's bylaws is to be enforced as it is reasonable to believe the shareholders who took their shares in reliance on the bylaws intended the requirements of the bylaws as written. Plaintiff argues that the trial court improperly relied on facts *de hors* the record to find the board intentionally intended to operate with only three directors and allowing two directors to operate on its behalf, in violation of Arlington's bylaws. Plaintiff adds that the board never called a meeting with less than the minimum number of directors for a quorum and that all decisions made were on unanimous votes.

Plaintiff further asserts that the trial court's ruling also violated the language of the Act. Plaintiff notes that action by shareholders in direct contravention of the Act cannot be allowed. *Somers v. AAA Temporary Services, Inc.*, 5 Ill. App. 3d 931, 935 (1972). She contends that the language of section 8.15(b) of the Act is clear and controlling:

> "(b) If a corporation has a variable range board of directors, a quorum shall
> consist of a majority of the directors then in office, but not less than a majority of
> the minimum number of directors specified for the variable range of the board
> unless the articles of incorporation or by-laws specify a larger number." 805 ILCS
> 5/8.15(b) (West 2004).

Accordingly, plaintiff argues that, under the Act, on October 21, 2005, the absolute minimum quorum for a valid shareholder action in this case was three because the variable board

requirement set the minimum of four Board members. Plaintiff concludes that under *Somers*, the trial court erred in allowing for a quorum under the statutory mandate. Further, plaintiff adds that under section 2.25 of the Act (805 ILCS 5/2.25 (West 2004)), the bylaws could only be altered consistent with the articles and bylaws. Plaintiff asserts that under Article XIV of the bylaws, an affirmative vote of 80% was required for any change of the bylaws. She argues that this clearly demonstrates the shareholders' desire to require a supermajority before any major changes could be made.

Defendants respond that the trial court properly found that the variable range requirement of section 3.2 of the bylaws was abrogated by nonuse and a quorum was present for the October 21, 2005, vote. Defendants cite generally to the abstract opinion in *Johnson v. Sengstacke*, 334 Ill. App. 620 (1948) (abstract opinion), and discuss *The First Church of Deliverance v. Holcomb*, 150 Ill. App. 3d 703 (1986), as authority for this doctrine. In *Johnson*, the plaintiff sought injunctive relief and damages against the defendant corporation. The plaintiff claimed that defendant Sengstacke had improperly discharged him in violation of a resolution passed by the board that required board approval of employee hiring and terminations. *Johnson*, slip op. at 5. Sengstacke was president, general manager and a member of the board of directors and did not obtain board approval when he terminated the plaintiff's employment. *Johnson*, slip op. at 2-3.

This court affirmed the dismissal of the plaintiff's case for want of equity. From the time the board resolution was passed until the plaintiff was terminated - a period of four years - Sengstacke had either hired or terminated 300 employees with the full knowledge of the board without any formal written resolution of acceptance. *Johnson*, slip op. at 5. Finding the resolution the same as a bylaw, this court cited the supreme court of Washington for the

proposition that a corporation waives or abrogates a bylaw when it acts or contracts in disregard of the bylaw with the express or implied consent of the stockholders or board members. *Johnson*, slip op. at 5-6, quoting *Bay City Lumber Co. v. Anderson*, 8 Wash.2d 191, 204, 111 P.2d 771, 777 (1941). The *Johnson* court then concluded that the course of the conduct of the board, by acquiescing in the hiring or termination without approval, waived or abrogated the bylaw. *Johnson*, slip op. at 5.

In *Holcomb*, the plaintiff church conducted an annual meeting with less than a quorum under its bylaws, during which the church board voted to remove and replace certain directors. *Holcomb*, 150 Ill. App. 3d at 705-06. On appeal, this court, citing *Johnson*, held that the church had abrogated the quorum bylaw by nonuse. Because the evidence showed that the board had never followed the quorum requirement in its history, its course of conduct indicated acquiescence in removal of that bylaw. *Holcomb*, 150 Ill. App. 3d at 710.

Defendants assert that the situation in this case is analogous to *Holcomb*. Over the course of six years, the Board met and made at least three decisions without the minimum number of board members. Therefore, defendants argue the trial court did not rest on facts *de hors* the record as plaintiff contends, but simply on the course of conduct over that time.

Defendants argue that because of the abrogation of that rule, the quorum requirement of section 3.9(a) of the bylaws simply requires a majority of directors consistent with section 8.15 of the Act. 805 ILCS 5/8.15(a) (West 2004). Defendants note that the provisions of the bylaws requiring certain votes for modification of the bylaws or other major decisions do not apply to a vote to change the articles. Under section 10.05 of the Act, a corporation may amend its articles of incorporation at any time. 805 ILCS 5/10.05 (West 2004). Defendants further argue that the

fallback provision of section 10.20 of the Act, which requires two-thirds vote of shares for amendments to articles of incorporation, applies and was followed here. 805 ILCS 5/10.20(c) (West 2004). Therefore, defendants conclude that a proper meeting and vote were held by a majority, and quorum of the board on October 21, 2005.

Case law on this issue is limited to *Johnson*, *Holcomb*, and a recent case involving another church board issue that discussed *Holcomb*. *Marsaw v. Richards*, 368 Ill. App. 3d 418 (2006). *Marsaw* also involved the displacement of church board members that had misused church funds. In settling the dispute, the trial court ordered an election of a new board by church members according to the articles of incorporation and written procedures of the church. *Marsaw*, 368 Ill. App. 3d at 429-30. The *Marsaw* court favorably cited *Holcomb*, but rejected the defendants' claims that the member election method provision had been abrogated by nonuse. The *Marsaw* court found that the apparent dormancy did not negate the effectiveness of the rules. The court, also relying on case law favoring the use of a majority rule in church governance disputes, found the trial court's decision to follow the dormant articles and procedures was not against the manifest weight of the evidence. *Marsaw*, 368 Ill. App. 3d at 430.

Plaintiff correctly notes that *Holcomb* was decided following an evidentiary hearing and not on the basis of summary judgment. *Marsaw* also was decided only after a two-week trial that demonstrated the church's articles and procedures had never been followed. Unlike these cases, Arlington is not a church but a professional organization. Like in *Holcomb* and *Johnson*, Arlington had operated regularly - over six years in this case - without compliance with its bylaws. Abrogation of the variable range provision was informally completed by the board's course of conduct. Following section 8.15 of the Act, a majority of the three-person board constituted a

quorum and the trial court did not err in granting summary judgment.

B. Corporate Deadlock and Section 12.56 of the Act

Plaintiff seizes on the trial court's statement that it had made its ruling on "the question of whether or not - - how the corporation can move forward" to make the argument that the trial court made a declaratory judgment to break the deadlock in the absence of a complaint under section 12.56 of the Act (805 ILCS 5/12.56 (West 2004)) was improper. Plaintiff argues that the trial court assumed that a deadlock existed among the shareholders that required the actions of October 21 and 26, 2005. Plaintiff argues that the trial court assumed facts *de hors* the record and broke the supposed deadlock without any pleading or evidence to meet the standards of section 12.56.

Section 12.56 of the Act provides various remedies for corporate deadlock or illicit, oppressive or fraudulent acts by a shareholder or board. 805 ILCS 5/12.56(b) (West 2004). Defendants did not seek summary judgment pursuant to section 12.56 and the trial court did not mention this section. The trial court did note that if it accepted plaintiff's position, then Arlington would not be able to move forward. However, the trial court made this statement to bolster its position that the Arlington board's method of operation indicated a waiver of the variable range requirement.

Plaintiff filed a complaint alleging breach of contract, conspiracy, and breach of fiduciary duty. Defendants filed a motion for summary judgment, arguing that they had acted within the articles and bylaws and the Act. Accordingly, no parties sought a declaratory action or relief from a deadlock situation and the trial court expressly denied granting declaratory relief or relying on a deadlock situation at the hearing on the motion to reconsider. The trial court clearly found that

the board abrogated the variable range provision and the October 21, 2005, meeting and vote properly amended the articles.

### C.  Shareholder Approval Required Under the Bylaws

Plaintiff next states that as sections 9.3(3), (4) and (12) of the bylaws require a vote of 67% of outstanding shares for any "decision or taking any action which materially affects the Corporation or the assets or operations thereof," or making "any material or substantial change in the purpose or character of the corporation," it was reversible error for the trial court to ratify the amendment of the articles with a vote by only 66.93% of outstanding shares.  Plaintiff notes that section 8.15(c) of the Act requires a quorum of either a majority or a number specifically provided for by the articles of incorporation or bylaws for a vote to be valid.  805 ILCS 5/8.15(c) (West 2004).  Accordingly, plaintiff concludes that, even if the trial court properly found a quorum existed for the October 21, 2005, meeting, the explicit 67% requirement for material decisions was not met and the decision did not have the required board approval.

Defendants argue that section 9.3 of the bylaws does not specifically mention amendment of the articles or require any specific vote for such an action.  Defendants assert that the specific language of Article XIV of the bylaws expressly reserves the right for the articles to provide different requirements for the amendment of the bylaws.  Article IV states "[e]xcept to the extent otherwise provided in the Articles" and the articles were silent on this issue when the bylaws were created.  Defendants highlight that since the articles are silent as to a voting requirement to amend the articles, section 10.20 of the Act must be followed.  805 ILCS 5/10.20(d) (West 2004).  Section 10.20 provides that if articles of incorporation are silent on this issue, they may be amended with a two-thirds vote of shares.  805 ILCS 5/10.20(c) (West 2004).

First, plaintiff's quotation above of section 9.3 of the bylaws is incorrect. The relevant subsections state in full:

"(3) making any material and substantial change in the purposes of the Corporation or the character of its business;

\*\*\*

(12) making any other decision or taking any action which materially affects the Corporation or the assets or operations thereof."

Plaintiff's modifications of these sections in her quoted text reduce the emphasis placed on the importance of the changes that are made and the applicability of the changes to the assets and daily operations. Arguably, subsection (12) could apply to the articles of incorporation. However, plaintiff's highlighting subsection (4), which specifically designates modification of the bylaws as a major decision, emphasizes the silence as to the amendment of the articles. We agree that this supports defendants' argument that this silence, combined with the more specific language of Article XIV, requires following the voting requirement of the Act, and not section 9.3 of the bylaws for amendment to the articles. Therefore, the modification of the articles by a two-thirds vote of the board was properly affirmed by the trial court.

D. Conflict of Interest Under Act Section 8.60

Plaintiff asserts that neither Regan nor Manglani was disinterested in the vote at issue and, as such, had a conflict of interest pursuant to section 8.60 of the Act. 805 ILCS 5/8.60 (West 2004). Plaintiff argues that by meeting prior to her arrival, Regan and Manglani voted to amend the articles as part of their plan to eventually remove her from Arlington. Plaintiff claims that this action improved Regan's and Manglani's ownership control of Arlington, as well as its assets and

income. Accordingly, plaintiff concludes that Regan and Manglani were not disinterested in the vote and the trial court erred in granting summary judgment.

Under section 8.60 of the Act, when the validity of a vote is questioned in a proceeding, the party asserting validity (defendants) has to satisfy the burden of proving the fairness of the vote. 805 ILCS 5/8.60(a) (West 2004). Plaintiff argues that defendants did not meet this burden and the votes of Regan and Manglani may not be counted for the purpose of establishing a quorum. Plaintiff argues that *Weiss Medical Complex, Ltd. v. Kim*, 87 Ill. App. 3d 111 (1980), is controlling. In *Kim*, this court held that the votes of four of seven directors on the issue of removing restrictive covenants from employment contracts were disqualified because each director stood to gain financially from removing such a covenant from his or her own contract. *Kim*, 87 Ill. App. 3d at 115-16. Therefore, since these members were intended beneficiaries and had a personal interest, there was no quorum and the vote was voidable. *Kim*, 87 Ill. App. 3d at 116. Accordingly, plaintiff argues that Regan and Manglani voted for their own interest to improve their ownership control of Arlington's assets and income and their vote must be declared void.

Defendants argue that section 8.60 does not apply to this situation and that *Kim* and the other cases cited by plaintiff are distinguishable either on the facts or because they did not involve the application of section 8.60. Defendants assert that section 8.60 does not apply to internal corporate governance, but outside business transactions contrary to the corporate interests. Defendant argues that unlike the cases cited by plaintiff, there was no direct pecuniary, immediate, or obvious interest to the detriment of Arlington. There was no sale of stock (*In re Joy Recover Technology Corp.*, 286 B.R. 54, 63 (Bankr. N.D. Ill. 2002)), no reimbursement of funds (*Abreu*

*v. Unica Industrial Sales, Inc.*, 224 Ill. App. 3d 439, 447-48 (1991)), and no immediate gain of business as in *Kim*.

Moreover, the plain language of section 8.60 supports defendants' position. Section 8.60 discusses the validity of a "transaction" in relation to a singular director and whether that director would gain and the corporation's interest would be usurped. As defendants note, the vote in this case involved a change to the articles that modified procedures. While, ultimately, Regan and Manglani may have been able to increase their corporate ownership, this is not the type of "transaction" contemplated by section 8.60.

### E. Questions of Material Fact

Plaintiff claims that several questions of material fact were never resolved by the trial court, thereby making summary judgment improper. Plaintiff argues that the trial court did not determine: whether the October 21, 2005, meeting was a valid meeting; whether Regan and Manglani had any intention of actually conducting a proper meeting pursuant to the notice; whether plaintiff was present at the alleged meeting; and whether plaintiff consented to the amendment, *sub silencio*. Plaintiff asserts that, instead, the trial court assumed that Arlington's method of operation permitted conduct of corporate business with only two directors present. Accordingly, plaintiff concludes that summary judgment was improper because there may be no genuine issue as to any material fact when granting summary judgment. 735 ILCS 5/2-1005(c) (West 2004).

We agree with defendants, who argue, similar to above and below, that this issue was addressed when the trial court determined that the variable range of directors provision had been abrogated by nonuse. When the trial court made this determination, plaintiff's alleged questions

of material fact became nonissues. While defendants appear to concede that there is a question of fact of whether plaintiff actually attended the meeting, they maintain it is immaterial because a quorum existed with Regan and Manglani present, a fact that is not in question. Therefore, the trial court did not ignore this issue, but properly granted summary judgment based on its finding that a quorum met and a sufficient vote of shareholders was accomplished.

### F. Waiver of Bylaws by Plaintiff

Plaintiff next argues that implicit in the trial court's finding that the parties had adopted a course of conduct over time is a finding that plaintiff herself waived the quorum requirement. She contends that it is well-settled that waiver is the intentional relinquishment of a known and existing right. Plaintiff asserts that there is no waiver as a matter of law if the material facts are in dispute or more than one reasonable inference may be drawn from the facts. *Wells v. Minor*, 219 Ill. App. 3d 32, 45 (1991). Even if this requirement was waived, plaintiff argues that the quorum requirement of section 8.15 of the Act expressly contemplates this situation and cannot be waived.

Defendants respond that plaintiff provides no legal support for this argument and, in any event, the actions taken comport with section 8.15 of the Act. As addressed above, we agree that the trial court properly found that the variable range of directors bylaw was abrogated by nonuse of the corporation. The operable quorum provision became section 3.9(a) of the bylaws which, consistent with section 8.15(a) of the Act, requires a simple majority for a quorum. Therefore, the requirements of the Act were not waived and plaintiff's argument fails.

### G. Conspiracy and Breach of Fiduciary Duty Counts

Finally, plaintiff contends that it was reversible error to grant summary judgment on her

conspiracy and breach of fiduciary duty counts because she alleged malicious and overt actions that were wrongful. Plaintiff asserts that these alleged acts were not addressed by defendants evidentiary submissions. Accordingly, plaintiff concludes that issues of fact clearly remain on these counts and summary judgment on these issues should be reversed.

Neither of these claims by plaintiff is actionable absent an unlawful underlying act. See *In re Estate of Vogel*, 291 Ill. App. 3d 1044, 1050 (1997) (no breach of duty not to misappropriate funds because wife's withdrawal of funds was not wrongful, unauthorized, improper or unlawful); *Langer v. Becker*, 176 Ill. App. 3d 745, 754-55 (1988) (conspiracy to commit an act not actionable unless the underlying act itself is wrongful or tortious conduct). Since the trial court found that the quorum and vote requirements were satisfied by the October 21, 2005, meeting and vote, it found that defendants acted lawfully under Arlington's articles and bylaws and the Act. As we have found the trial court properly made this finding, it also properly granted summary judgment on these two counts.

### III. CONCLUSION

Accordingly, for the aforementioned reasons, the decision of the trial court is affirmed.

Affirmed.

NEVILLE, P.J., and CAMPBELL, J., concur.

| | |
|---|---|
| Please Use Following Form:<br><br>Complete TITLE of Case | SUSAN B. KERN, M.D.,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>ARLINGTON RIDGE PATHOLOGY, S.C., and RICHARD REGAN, M.D.<br><br>Defendants-Appellees. |
| Docket No.<br><br>COURT<br><br>Opinion Filed | Nos. 1-07-2615<br>Appellate Court of Illinois<br>First District, FOURTH Division<br><br>August 7, 2008<br>(Give month, day and year) |
| JUSTICES | JUSTICE MURPHY delivered the opinion of the court:<br><br>Neville, P.J. and Campbell, J.,      concur [s]<br><br>dissent[s] |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br><br>The Honorable James F. Henry , Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Attorney for **Plaintiff-Appellant**: Herman J. Marino, Esq.<br>53 W. Jackson Blvd., Suite 1442, Chicago, IL 60604<br>Phone: 312.347.9990<br><br>Attorneys for **Defendants-Appellees:** Diane M. Kehl, Frederic T. Knape, Michael J. Waters, Vedder<br>**Arlington Ridge Pathology, S.C.** Price P.C., 222 N. La Salle Street, Chicago, IL 60601<br>Phone: 312.609.7500<br><br>**RichardRegan, M.D.** Thomas J. Reed, Paul J. Voss, Law Offices of Thomas J. Reed, Ltd.<br>53 W. Jackson Boulevard, Suite 1560<br>Chicago, IL 60604<br>Phone: 312.431.3100 |